Electronically FILED by Superior Court of California, County of Los Angeles on 02/05/2019 06:55 PM Sherri R. Carter, Executive Officer/Clerk of Court, by R. Perez,Deputy Clerk
19STCV03958

**SUM-100**

# · SUMMONS
## *(CITACION JUDICIAL)*

| | FOR COURT USE ONLY<br>*(SOLO PARA USO DE LA CORTE)* |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

INDIAN HARBOR INSURANCE COMPANY, a Delaware limited
liability company; and DOES 1 through 10,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

INNOVATIVE ARTISTS TALENT & LITERARY AGENCY, INC., a
California corporation

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* Los Angeles Superior Court | CASE NUMBER:<br>*(Número del Caso).* |
|---|---|

111 N. Hill Street
Los Angeles, CA 90012

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Kirk A. Pasich, Pasich LLP, 1100 Glendon Ave., Suite 1000, Los Angeles, CA 90024 (424) 313-7860

Sherri R. Carter Executive Officer / Clerk of Court

| DATE: 02/05/2019<br>*(Fecha)* | Clerk, by<br>*(Secretario)* | Ricardo Perez | , Deputy<br>*(Adjunto)* |
|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* INDIAN HARBOR Insurance Company
   under: ☒ CCP 416.10 (corporation)      ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)      ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)      ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☒ by personal delivery on *(date):* 3/1/19

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>*www.courtinfo.ca.gov* |
|---|---|---|

**EXHIBIT A**
**Page 005**

Electronically FILED by Superior Court of California, County of Los Angeles on 02/26/2019 10:50 AM Sherri R. Carter, Executive Officer/Clerk of Court, by M. Panganiban,Deputy Clerk

1  Kirk Pasich (SBN 94242)
   kpasich@pasichllp.com
2  Nathan M. Davis (SBN 287452)
   ndavis@pasichllp.com
3  PASICH LLP
   1100 Glendon Avenue, Suite 1000
4  Los Angeles, California 90024-3503
   Telephone: (424) 313-7860
5  Facsimile: (424) 313-7890

6  Attorneys for Plaintiff

7

8              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                  **FOR THE COUNTY OF LOS ANGELES**

10

| 11 INNOVATIVE ARTISTS TALENT & LITERARY AGENCY, INC., a California 12 corporation, | Case No. 19STCV03958 |
|---|---|
| | Assigned to the Honorable Michelle Williams Court, Dept. 74 |
| 13 Plaintiff, | **NOTICE OF ADVANCE JURY FEE DEPOSIT** |
| 14 v. | |
| 15 INDIAN HARBOR INSURANCE COMPANY, a Delaware limited liability 16 company; and DOES 1 through 10, | Complaint Filed: February 5, 2019 Trial Date: None set |
| 17 Defendants. | |

18

19

20    **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

21        **PLEASE TAKE NOTICE** that Plaintiff Innovative Artists Talent & Literary Agency, Inc.

22  is hereby posting its advance jury fee deposit in the amount of $150.00.

23  DATED: February 26, 2019          PASICH LLP

24
                                  By: _____
25                                     Nathan M. Davis

26                                     Attorneys for Plaintiff

27

28

---
                    **NOTICE OF ADVANCE JURY FEE DEPOSIT**

199164

| | |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA**<br>**COUNTY OF LOS ANGELES** | Reserved for Clerk's File Stamp |
| COURTHOUSE ADDRESS:<br>Stanley Mosk Courthouse<br>111 North Hill Street, Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>**02/21/2019**<br>Sherri R. Carter, Executive Officer / Clerk of Court<br>By: _____ Rosalia Cruz _____ Deputy |
| PLAINTIFF(S):<br>Innovative Artists Talent & Literary Agency, Inc., a California Corporati | |
| DEFENDANT(S):<br>Indian Harbor Insurance Company, a Delaware Limited Liability Comp. | |
| **ORDER TO SHOW CAUSE HEARING** | CASE NUMBER:<br>19STCV03958 |

To the party / attorney of record:

You are ordered to appear for an Order to Show Cause Hearing on <u>04/16/2019</u> at <u>8:30 AM</u> in department <u>74</u> of this court, <u>Stanley Mosk Courthouse</u> ,
and show cause why sanctions should not be imposed for:

[✔]   Failure to file proof of service.

Failure to comply or appear may result in sanctions pursuant to one or more of the following:  California Rules of Court, rule 2.30 and rule 3.1340; Code of Civil Procedure sections 177.5, 575.2, 583.150, 583.310, 583.360, 583.410, 583.420, 583.430; and Government Code section 68608.

[  ]   To avoid a mandatory appearance all required documents must be filed at least 5 days prior to the date of the hearing.



Dated:  <u>02/21/2019</u>

Michelle Williams Court / Judge

Judicial Officer

**ORDER TO SHOW CAUSE HEARING**

Cal. Rules of Court, rule 2.30
LASC Local Rules, Chapter 7

**EXHIBIT A**
**Page 007**

| SUPERIOR COURT OF CALIFORNIA COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS: Stanley Mosk Courthouse 111 North Hill Street, Los Angeles, CA 90012 | **FILED** Superior Court of California County of Los Angeles 02/21/2019 Sherri R. Carter, Executive Officer / Clerk of Court By: _____ Rosalie Cruz _____ Deputy |
| PLAINTIFF/PETITIONER: Innovative Artists Talent & Literary Agency, Inc., a California Corporation | |
| DEFENDANT/RESPONDENT: Indian Harbor Insurance Company, a Delaware Limited Liability Company | |
| CERTIFICATE OF MAILING | CASE NUMBER: 19STCV03958 |

I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Order to Show Cause Failure to File Proof of Service upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Los Angeles, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.

Nathan M. Davis
Pasich, LLP
1100 Glendon Avenue, Suite 1000
Los Angeles, CA 90024

Sherri R. Carter, Executive Officer / Clerk of Court

Dated: 02/21/2019

By: _Rosalie Cruz_
Deputy Clerk

**CERTIFICATE OF MAILING**

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Stanley Mosk Courthouse<br>111 North Hill Street, Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>**02/21/2019**<br>Sherri R. Carter, Executive Officer / Clerk of Court<br>By: _Rosalie Cruz_ Deputy |
| PLAINTIFF:<br>Innovative Artists Talent & Literary Agency, Inc., a California Corpc | |
| DEFENDANT:<br>Indian Harbor Insurance Company, a Delaware Limited Liability Cc | |
| **NOTICE OF CASE MANAGEMENT CONFERENCE** | CASE NUMBER:<br>19STCV03958 |

TO THE PLAINTIFF(S)/ATTORNEY(S) FOR PLAINTIFF(S) OF RECORD:

You are ordered to serve this notice of hearing on all parties/attorneys of record forthwith, and meet and confer with all parties/attorneys of record about the matters to be discussed no later than 30 days before the Case Management Conference.

Your Case Management Conference has been scheduled at the courthouse address shown above on:

| Date:<br>06/05/2019 | Time:<br>8:30 AM | Dept:<br>74 |
|---|---|---|

NOTICE TO DEFENDANT:   THE SETTING OF THE CASE MANAGEMENT CONFERENCE DOES NOT EXEMPT THE DEFENDANT FROM FILING A RESPONSIVE PLEADING AS REQUIRED BY LAW.

Pursuant to California Rules of Court, rules 3.720-3.730, a completed Case Management Statement (Judicial Council form # CM-110) must be filed at least 15 calendar days prior to the Case Management Conference. The Case Management Statement may be filed jointly by all parties/attorneys of record or individually by each party/attorney of record. You must be familiar with the case and be fully prepared to participate effectively in the Case Management Conference.

At the Case Management Conference, the Court may make pretrial orders including the following, but not limited to, an order establishing a discovery schedule; an order referring the case to Alternative Dispute Resolution (ADR); an order reclassifying the case; an order setting subsequent conference and the trial date; or other orders to achieve the goals of the Trial Court Delay Reduction Act (Gov. Code, § 68600 et seq.)

Notice is hereby given that if you do not file the Case Management Statement or appear and effectively participate at the Case Management Conference, the Court may impose sanctions, pursuant to LASC Local Rule 3.37, Code of Civil Procedure sections 177.5, 575.2, 583.150, 583.360 and 583.410, Government Code section 68608, subdivision (b), and California Rules of Court, rule 2.2 et seq.

Dated: _02/21/2019_

_Michelle Williams Court_ / Judge
Judicial Officer

---

**CERTIFICATE OF SERVICE**

I, the below named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Notice of Case Management Conference upon each party or counsel named below:

☑ by depositing in the United States mail at the courthouse in _Los Angeles_, California, one copy of the original filed herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid.

☐ by personally giving the party notice upon filing of the complaint.

Nathan M. Davis
1100 Glendon Avenue, Suite 1000
Los Angeles, CA 90024

Sherri R. Carter, Executive Officer / Clerk of Court

Dated: _02/21/2019_

By _Rosalie Cruz_
Deputy Clerk

| LACIV 132 (Rev. 07/13)<br>LASC Approved 10-03<br>For Optional Use | **NOTICE OF<br>CASE MANAGEMENT CONFERENCE** | Cal. Rules of Court, rules 3.720-3.730<br>LASC Local Rules, Chapter Three |
|---|---|---|

**EXHIBIT A**
**Page 009**

Electronically FILED by Superior Court of California, County of Los Angeles on 02/05/2019 03:18 PM Sherri R. Carter, Executive Officer/Clerk of Court, by R. Perez,Deputy Clerk

**CM-010**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>Kirk A. Pasich (SBN 94242), Nathan M. Davis (SBN 287452)<br>PASICH LLP<br>1100 Glendon Avenue, Suite 1000<br>Los Angeles, CA 90024<br>TELEPHONE NO.: (424) 313-7860    FAX NO.: (424) 313-7890<br>ATTORNEY FOR *(Name):* Plaintiff Innovative Artists Talent & Literary Agency, Inc. | FOR COURT USE ONLY |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  LOS ANGELES
STREET ADDRESS: 111 N. Hill Street
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Central

CASE NAME:
Innovative Artists etc. v. Indian Harbor Insurance Co.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| [✓] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter  [ ] Joinder<br>Filed with first appearance by defendant<br>*(Cal. Rules of Court, rule 3.402)* | JUDGE:<br><br>DEPT: | |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[✓] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is  [✓] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [✓] monetary  b. [✓] nonmonetary; declaratory or injunctive relief  c. [✓] punitive
4. Number of causes of action *(specify):* Three (3)
5. This case [ ] is  [✓] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: February 5, 2019
Nathan M. Davis
_____
(TYPE OR PRINT NAME)    ► _____ (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). *(Cal. Rules of Court, rule 3.220.)* Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

**EXHIBIT A**
**Page 010**

| SHORT TITLE: Innovative Artists etc. v. Indian Harbor Insurance Co. | CASE NUMBER |
|---|---|

# CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION
## (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court.

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

### Applicable Reasons for Choosing Court Filing Location (Column C)

1. Class actions must be filed in the Stanley Mosk Courthouse, Central District.
2. Permissive filing in central district.
3. Location where cause of action arose.
4. Mandatory personal injury filing in North District.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.

7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.
11. Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection, or personal injury).

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ A7100 Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |
| | Uninsured Motorist (46) | ☐ A7110 Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1, 4, 11 |
| **Other Personal Injury/ Property Damage/Wrongful Death Tort** | Asbestos (04) | ☐ A6070 Asbestos Property Damage | 1, 11 |
| | | ☐ A7221 Asbestos - Personal Injury/Wrongful Death | 1, 11 |
| | Product Liability (24) | ☐ A7260 Product Liability (not asbestos or toxic/environmental) | 1, 4, 11 |
| | Medical Malpractice (45) | ☐ A7210 Medical Malpractice - Physicians & Surgeons | 1, 4, 11 |
| | | ☐ A7240 Other Professional Health Care Malpractice | 1, 4, 11 |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250 Premises Liability (e.g., slip and fall) | 1, 4, 11 |
| | | ☐ A7230 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1, 4, 11 |
| | | ☐ A7270 Intentional Infliction of Emotional Distress | 1, 4, 11 |
| | | ☐ A7220 Other Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

**EXHIBIT A
Page 011**

| SHORT TITLE: Innovative Artists etc. v. Indian Harbor Insurance Co. | | CASE NUMBER | |
|---|---|---|---|

| A Civil Case Cover Sheet Category No. | B Type of Action (Check only one) | | C Applicable Reasons - See Step 3 Above |
|---|---|---|---|
| **Non-Personal Injury/ Property Damage/Wrongful Death Tort** | | | |
| Business Tort (07) | ☐ A6029 Other Commercial/Business Tort (not fraud/breach of contract) | | 1, 2, 3 |
| Civil Rights (08) | ☐ A6005 Civil Rights/Discrimination | | 1, 2, 3 |
| Defamation (13) | ☐ A6010 Defamation (slander/libel) | | 1, 2, 3 |
| Fraud (16) | ☐ A6013 Fraud (no contract) | | 1, 2, 3 |
| Professional Negligence (25) | ☐ A6017 Legal Malpractice | | 1, 2, 3 |
| | ☐ A6050 Other Professional Malpractice (not medical or legal) | | 1, 2, 3 |
| Other (35) | ☐ A6025 Other Non-Personal Injury/Property Damage tort | | 1, 2, 3 |
| **Employment** | | | |
| Wrongful Termination (36) | ☐ A6037 Wrongful Termination | | 1, 2, 3 |
| Other Employment (15) | ☐ A6024 Other Employment Complaint Case | | 1, 2, 3 |
| | ☐ A6109 Labor Commissioner Appeals | | 10 |
| **Contract** | | | |
| Breach of Contract/ Warranty (06) (not insurance) | ☐ A6004 Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | | 2, 5 |
| | ☐ A6008 Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | | 2, 5 |
| | ☐ A6019 Negligent Breach of Contract/Warranty (no fraud) | | 1, 2, 5 |
| | ☐ A6028 Other Breach of Contract/Warranty (not fraud or negligence) | | 1, 2, 5 |
| Collections (09) | ☐ A6002 Collections Case-Seller Plaintiff | | 5, 6, 11 |
| | ☐ A6012 Other Promissory Note/Collections Case | | 5, 11 |
| | ☐ A6034 Collections Case-Purchased Debt (Charged Off Consumer Debt Purchased on or after January 1, 2014) | | 5, 6, 11 |
| Insurance Coverage (18) | ☑ A6015 Insurance Coverage (not complex) | | 1, 2, 5, 8 |
| Other Contract (37) | ☐ A6009 Contractual Fraud | | 1, 2, 3, 5 |
| | ☐ A6031 Tortious Interference | | 1, 2, 3, 5 |
| | ☐ A6027 Other Contract Dispute(not breach/insurance/fraud/negligence) | | 1, 2, 3, 8, 9 |
| **Real Property** | | | |
| Eminent Domain/Inverse Condemnation (14) | ☐ A7300 Eminent Domain/Condemnation      Number of parcels_____ | | 2, 6 |
| Wrongful Eviction (33) | ☐ A6023 Wrongful Eviction Case | | 2, 6 |
| Other Real Property (26) | ☐ A6018 Mortgage Foreclosure | | 2, 6 |
| | ☐ A6032 Quiet Title | | 2, 6 |
| | ☐ A6060 Other Real Property (not eminent domain, landlord/tenant, foreclosure) | | 2, 6 |
| **Unlawful Detainer** | | | |
| Unlawful Detainer-Commercial (31) | ☐ A6021 Unlawful Detainer-Commercial (not drugs or wrongful eviction) | | 6, 11 |
| Unlawful Detainer-Residential (32) | ☐ A6020 Unlawful Detainer-Residential (not drugs or wrongful eviction) | | 6, 11 |
| Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | | 2, 6, 11 |
| Unlawful Detainer-Drugs (38) | ☐ A6022 Unlawful Detainer-Drugs | | 2, 6, 11 |

LACIV 109 (Rev 2/16)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 2 of 4

**EXHIBIT A
Page 012**

| SHORT TITLE: Innovative Artists etc. v. Indian Harbor Insurance Co. | CASE NUMBER |
|---|---|

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2, 3. 6 |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus<br>☐ A6152  Writ - Mandamus on Limited Court Case Matter<br>☐ A6153  Writ - Other Limited Court Case Review | 2, 8<br>2<br>2 |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2, 8 |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1, 2, 8 |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1, 2. 8 |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1, 2, 5. 8 |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ A6141  Sister State Judgment<br>☐ A6160  Abstract of Judgment<br>☐ A6107  Confession of Judgment (non-domestic relations)<br>☐ A6140  Administrative Agency Award (not unpaid taxes)<br>☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax<br>☐ A6112  Other Enforcement of Judgment Case | 2, 5, 11<br>2, 6<br>2, 9<br>2, 8<br>2, 8<br>2, 8, 9 |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1, 2. 8 |
| | Other Complaints (Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only<br>☐ A6040  Injunctive Relief Only (not domestic/harassment)<br>☐ A6011  Other Commercial Complaint Case (non-tort/non-complex)<br>☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1, 2, 8<br>2, 8<br>1, 2, 8<br>1, 2, 8 |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2, 8 |
| | Other Petitions (Not Specified Above) (43) | ☐ A6121  Civil Harassment<br>☐ A6123  Workplace Harassment<br>☐ A6124  Elder/Dependent Adult Abuse Case<br>☐ A6190  Election Contest<br>☐ A6110  Petition for Change of Name/Change of Gender<br>☐ A6170  Petition for Relief from Late Claim Law<br>☐ A6100  Other Civil Petition | 2, 3, 9<br>2, 3, 9<br>2, 3, 9<br>2<br>2. 7<br>2, 3, 8<br>2, 9 |

LACIV 109 (Rev 2/16)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 3 of 4

**EXHIBIT A
Page 013**

| SHORT TITLE: Innovative Artists etc. v. Indian Harbor Insurance Co. | CASE NUMBER |
|---|---|

**Step 4: Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected.  Enter the address which is the basis for the filing location, including zip code. (No address required for class action cases).

| REASON:<br><br>☐ 1. ☑ 2. ☐ 3. ☐ 4. ☐ 5. ☐ 6. ☐ 7.  ☐ 8. ☐ 9. ☐ 10. ☐ 11. | ADDRESS:<br>1505 10th Street | |
|---|---|---|
| CITY:<br>Santa Monica | STATE:<br>CA | ZIP CODE:<br>90401 |

**Step 5: Certification of Assignment:** I certify that this case is properly filed in the __Central__ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., §392 et seq., and Local Rule 2.3(a)(1)(E)].

Dated: __February 5, 2019__

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 02/16).

5. Payment in full of the filing fee, unless there is court order for waiver, partial or scheduled payments.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

**EXHIBIT A**
**Page 014**

Electronically FILED by Superior Court of California, County of Los Angeles on 02/05/2019 06:55 PM Sherri R. Carter, Executive Officer/Clerk of Court, by R. Perez,Deputy Clerk
19STCV03958

Assigned for all purposes to: Stanley Mosk Courthouse, Judicial Officer: Michelle Williams Court

1 | Kirk Pasich (SBN 94242)
kpasich@pasichllp.com
2 | Nathan M. Davis (SBN 287452)
ndavis@pasichllp.com
3 | PASICH LLP
1100 Glendon Avenue, Suite 1000
4 | Los Angeles, California 90024-3503
Telephone: (424) 313-7860
5 | Facsimile: (424) 313-7890

6 | Attorneys for Plaintiff

7 | **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

8 | **FOR THE COUNTY OF LOS ANGELES**

9 |

10 | INNOVATIVE ARTISTS TALENT &
LITERARY AGENCY, INC., a California
11 | corporation,

Case No. _____

12 | Plaintiff,

13 | v.

14 | INDIAN HARBOR INSURANCE
COMPANY. a Delaware limited liability
15 | company; and DOES 1 through 10,

16 | Defendants.

**COMPLAINT FOR BREACH OF
CONTRACT; TORTIOUS BREACH OF
THE COVENANT OF GOOD FAITH
AND FAIR DEALING; and
DECLARATORY RELIEF**

**DEMAND FOR JURY TRIAL**

17 |

18 |

19 | Plaintiff Innovative Artists Talent & Literary Agency, Inc. ("Innovative") complains of

20 | defendant Indian Harbor Insurance Company, and alleges as follows:

21 | **NATURE OF THE ACTION**

22 | 1. Innovative and certain other related entities were insured under an errors and

23 | omissions policy issued by Indian Harbor. Among other things, the policy obligated Indian

24 | Harbor indemnify its insureds for settlements of claims against it seeking damages for acts or

25 | omissions arising out of its professional services. When Innovative and other insureds were sued

26 | for such alleged acts or omissions, it notified Indian Harbor, asking it to honor its duties under the

27 | policy. When it appeared that there was an opportunity to reach a reasonable settlement of that

28 | lawsuit, Innovative asked Indian Harbor to contribute. Indian Harbor agreed to do so.

**COMPLAINT**

199164

1   Unfortunately for Innovative, when it actually became possible to settle the lawsuit, Indian Harbor

2   reneged on that commitment and refused to pay any monies due under its policy, thereby

3   breaching its contract and the implied covenant of good faith and fair dealing.  Innovative brings

4   this action to recover the damages caused by Indian Harbor's breaches and bad faith.

5   <u>**THE PARTIES**</u>

6          2.      Innovative is a California corporation engaged in representing clients as a talent

7   agency, including in California.

8          3.      Innovative is informed and believes, and on that basis alleges, that Indian Harbor is

9   a Delaware corporation authorized to transact, and transacting, business in California and the

10  County of Los Angeles.  Indian Harbor is part of the AXA XL family of insurance companies.

11  According to AXA XL's website, "With a network reach in more than 200 countries, AXA XL

12  Insurance reaches across borders with the effective risk management services our clients and

13  brokers need."  *Global*, AXA XL, https://axaxl.com/insurance/global (*last visited* Jan. 30, 2019).

14  The AXA XL family also states:

15          What is an insurance policy after all?  When you pay an insurance

16          premium, you're buying a promise.  And when you buy an AXA

17          XL insurance policy, our promise is to investigate, manage, and

18          resolve your covered claim - so you can move forward with getting

19          back to business as soon as possible.  We call it: getting you from

20          stop to go.

21  *Insurance Claims*, AXA XL, https://axaxl.com/insurance/claims (*last visited* Jan. 30, 2019).

22          4.      Innovative is ignorant of the true names and capacities, whether individual,

23  associate, partnership, corporate, or otherwise, of the defendants fictitiously designated in this

24  complaint as Does 1 through 10, and therefore sues those defendants by these fictitious names.

25  Innovative will seek leave of court to amend this complaint when the true names and capacities of

26  these defendants have been ascertained.  Innovative is informed and believes, and on that basis

27  alleges, that Does 1 through 10, in some way unknown to Innovative, have underwritten or

28  provided insurance coverage to Innovative, or are otherwise responsible for losses alleged in this

PASICH

2
**COMPLAINT**

199164

1  complaint, and that Does 1 through 10 are authorized to, and do, transact insurance business in

2  California and the County of Los Angeles.

3  **THE ERRORS & OMISSIONS INSURANCE POLICY**

4  5.  To mitigate risks associated with doing business as talent agents, Innovative

5  purchased errors and omissions insurance from Indian Harbor.  It purchased such insurance from

6  Indian Harbor for several years, paying substantial premiums and expecting Indian Harbor to

7  honor its duties thereunder.

8  6.  One of the errors and omissions insurance policies that Innovative purchased from

9  Indian Harbor is policy number MPP903135402 (the "Policy").  A true and correct copy of at least

10  the relevant portions of the Policy is attached hereto as Exhibit A and incorporated by reference.

11  Innovative and Innovative Artists, Innovative Artists, LLC, and Innovative Artists Talent &

12  Literary Agency NY, Inc., are Named Insureds (collectively, the "Innovative Insureds") under the

13  Policy.  The Policy specifies that Innovative is "the sole agent and will act on behalf of all of

14  **Insureds**."  Policy, § I.9 & Decls. Item 1, as amended by Endorsement #001.  Innovative brings

15  this lawsuit on its own behalf and on behalf of the other Innovative Insureds.

16  7.  The Policy was in effect at least from September 12, 2014, to September 12, 2017.

17  It provides $3,000,000 in insurance for each claim, subject to a $250,000 retention. However, the

18  Policy has a provision designed to encourage its insureds to effect early settlements of claims

19  against them.  Specifically, the policy states that if an insured "resolves a **claim** as reflected in a

20  settlement agreement, order, dismissal or judgment, within one (1) year following the date that the

21  **claim** is reported in writing to [Indian Harbor], the **Named Insured** will be reimbursed or credited

22  up to 50% of the Self-Insured Retention they have paid for that **claim**. The maximum

23  reimbursement or credit is $25,000 per **policy period**." Policy, § G, as amended by

24  Endorsement #003.

25  8.  Indian Harbor agreed in the Policy that it had "the right and duty to defend all

26  covered **claims** brought in the United States, its territories and possessions."  Policy, § D, as

27  amended by Endorsement #003.  It also agreed in the Policy to "pay on the **Insured's** behalf

28  **damages** and **defense expenses** arising out of a **claim** first made against the **Insured** during the

3
**COMPLAINT**

199164

PASICH

1   **policy period,** and reported to the **Company** in writing during the **policy period,** by reason of an

2   actual or alleged act or omission including **personal injury**, in the performance of **professional**

3   **services.**" *Id.*, § B. "Professional Services" is defined to be services performed as a talent

4   manager "for a fee or other remuneration." *Id.*, § A.10 (referencing Decls. Item 7).

5                         **THE *WARNER BROS.* LAWSUIT**

6         9.     On October 24, 2016, Warner Bros. filed a lawsuit against the Innovative Insureds,

7   *Warner Bros. Entertainment Inc. v. Innovative Artists Talent & Literary Agency Inc.*, Case No.

8   2:16-cv-07902-BRO-AS, in the United States District Court for the Central District of California

9   (the "*Warner Bros.* lawsuit"). A true and correct copy of the First Amended Complaint therein is

10   attached hereto as Exhibit B and incorporated by reference.

11        10.    Warner Bros. alleged in the lawsuit that it provided the Innovative Insureds with

12   "screener" DVDs to deliver to their clientele who were voting members of one or more groups that

13   confer awards for achievement in film (such as members of the Academy of Motion Picture Arts

14   and Sciences). Warner Bros. also alleged that the Innovative Insureds mishandled those screener

15   DVDs that were sent to the Innovative Insureds in their capacities as talent agents in violation of

16   copyright laws. Accordingly, the *Warner Bros.* lawsuit alleged two causes of action, one for

17   copyright infringement in violation of the United States Copyright Act, and another for violation

18   of the federal Digital Millennium Copyright Act. The *Warner Bros.* lawsuit's allegations carried

19   with them the potential exposure of several million dollars in liability.

20        11.    As Innovative timely advised Indian Harbor, Warner Bros. and the Innovative

21   Insureds quickly began settlement discussions. In early 2017, with Indian Harbor's agreement, the

22   Innovative Insureds were able to negotiate a settlement with Warner Bros. That settlement was

23   concluded. As a result, Warner Bros. voluntarily dismissed its lawsuit on February 28, 2017.

24        12.    As a result of the *Warner Bros.* lawsuit and its settlement, the Innovative Insureds

25   incurred and paid damages and defense expenses insured under the Policy and greater than the

26   Policy's retention.

27

28

PASICH

4

**COMPLAINT**

199164

**INDIAN HARBOR'S BREACHES OF ITS DUTIES**

13.     Indian Harbor was obligated to defend the Innovative Insureds in the *Warner Bros.* lawsuit and, subject only to the satisfaction of the reduced retention amount, to pay for the defense costs that the Innovative Insureds incurred in connection with the *Warner Bros.* lawsuit and the settlement of that lawsuit. Indeed, as Innovative explained to Indian Harbor, the allegations in the *Warner Bros.* lawsuit were within the scope of the Policy's coverage because they included claims for damages resulting from the alleged mishandling of information provided to the Innovative Insureds in their capacities as talent agencies and as part of the services performed as talent agencies. Ex. B, ¶ 34.

14.     Innovative timely notified Indian Harbor of the *Warner Bros.* lawsuit.

15.     On November 3, 2016, Indian Harbor sent Innovative a letter promising to commit a certain amount of money to Innovative to fund a potential settlement.

16.     In reliance upon Indian Harbor's commitment, the Innovative Insureds made the offer agreed upon by Indian Harbor to settle the *Warner Bros.* lawsuit.

17.     However, on December 23, 2016, Indian Harbor blindsided the Innovative Insureds by reversing its position entirely, denying that it had any duty to defend or indemnify the Innovative Insureds at all in the *Warner Bros.* lawsuit, and reneging on its commitment to contribute to the settlement. In fact, Indian Harbor refused to contribute any amount to the settlement and refused to pay out any sums under the Policy. Indian Harbor's conduct and denial of coverage were incorrect, wrongful, and breaches of Indian Harbor's duties to its insured.

18.     As a result of Indian Harbor's improper denial of coverage, the Innovative Insureds were forced to pay significant sums above the Policy retention to defend against and settle the *Warner Bros.* lawsuit, which sums should have been paid by Indian Harbor. As a result, the Innovative Insureds were deprived of the insurance coverage and the benefits thereunder that Innovative had purchased from Indian Harbor.

19.     To date, Indian Harbor has not paid any of the Innovative Insureds any of the amounts due under the Policy.

199164

1     20.     To the extent not waived or otherwise excused, the Innovative Insureds complied

2  with all terms and conditions precedent contained in the Policy. Therefore, the Innovative

3  Insureds are entitled to all benefits of insurance provided by the Policy.

4                           **FIRST CAUSE OF ACTION**

5                 **(Breach of Contract against Indian Harbor)**

6     21.     Innovative realleges and incorporates by reference paragraphs 1 through 20.

7     22.     Indian Harbor had a duty to pay, up to the Policy's limit, for the reasonable

8  settlement of the *Warner Bros.* lawsuit.

9     23.     Indian Harbor breached its duties owed to the Innovative Insureds by, among other

10  things,

11           a.   asserting grounds for denying coverage for the Innovative Insureds' claim

12                 that it knew, or should have known, are not supported by, and in fact are

13                 contrary to, the terms of the Policy, the law, insurance industry custom and

14                 practices, and the facts;

15           b.   failing to pay up to the Policy limit for the reasonable settlement of the

16                 *Warner Bros.* lawsuit; and

17           c.   otherwise refusing to perform duties under the Policy.

18     24.     As a direct and proximate result of Indian Harbor's breach of contract, the

19  Innovative Insureds have sustained damages in an amount exceeding this Court's jurisdictional

20  limit, to be determined at trial.

21                      **SECOND CAUSE OF ACTION**

22     **(Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing**

23                   **against Indian Harbor)**

24     25.     Innovative realleges and incorporates by reference paragraphs 1 through 20, 22,

25  and 23.

26     26.     Implied in the Policy was a covenant that Indian Harbor would act in good faith

27  and deal fairly with the Innovative Insureds, that Indian Harbor would do nothing to interfere with

28  the rights of the Innovative Insureds to receive benefits due under the Policy, and that Indian

6

**COMPLAINT**

199164

1    Harbor would give at least the same level of consideration to the Innovative Insureds' interests as
2    it gave to its own interests.

3       27.    Indian Harbor also had a duty under the Policy, the law, and insurance industry
4    custom, practice, and standards to conduct a prompt and thorough investigation, including as to all
5    bases that might support the Innovative Insureds' claim for insurance coverage before reserving
6    rights to deny, and denying, coverage.

7       28.    Instead of complying with these duties, Indian Harbor acted in bad faith by, among
8    other things,

9           a.   failing to promptly conduct a full and thorough investigation of Warner
10               Bros.' claims and the Innovative Insureds' claim for insurance coverage,
11               and asserting grounds for denying coverage without conducting that
12               investigation;

13          b.   wrongfully and unreasonably asserting grounds for denying coverage that
14               Indian Harbor knew, or should have known, are not supported by, and in
15               fact are contrary to, the terms of the Policy, the law, insurance industry
16               custom and practice, and the facts;

17          c.   failing to fully inquire into bases that might support coverage for the
18               *Warner Bros.* lawsuit;

19          d.   unreasonably failing and refusing to honor its promises and representations
20               in the Policy;

21          e.   leading the Innovative Insureds to believe that Indian Harbor would fund a
22               reasonable settlement, but reversing its coverage position and denying
23               coverage entirely and wrongly;

24          f.   giving greater consideration to its own interests than it gave to the
25               Innovative Insureds' interests;

26          g.   otherwise acting as alleged above.

27

28

7
COMPLAINT

199164

PASICH

1    29.    In breach of the implied covenant of good faith and fair dealing, Indian Harbor did

2    the things and committed the acts alleged above, consciously withholding from the Innovative

3    Insureds the rights and benefits to which it is and was entitled under the Policy.

4    30.    In breach of the implied covenant of good faith and fair dealing, Indian Harbor did

5    the things and committed the acts alleged above.

6    31.    Indian Harbor's actions are inconsistent with the reasonable expectations of the

7    Innovative Insureds, are contrary to established industry custom and practice, are contrary to legal

8    requirements, are contrary to the express terms of the Policy, and constitute bad faith.

9    32.    As a direct and proximate result of Indian Harbor's actions, the Innovative Insureds

10   have been damaged in an amount exceeding the Court's jurisdictional limits.  Also, pursuant to

11   *Brandt v. Superior Court*, 37 Cal. 3d 813 (1985), Innovative is entitled to recover all attorneys'

12   fees that it has reasonably incurred, and continues to incur, in its efforts to obtain the benefits due

13   under the Policy that Indian Harbor has withheld, and is withholding, in bad faith.  Innovative is

14   entitled to interest at the maximum legal rate.

15   33.    Indian Harbor's conduct is despicable and has been done with a conscious

16   disregard of the Innovative Insureds' rights, constituting oppression, fraud, or malice.  Indian

17   Harbor has engaged in a series of acts designed to deny the Innovative Insureds the benefits due

18   under the Policy.  Specifically, Indian Harbor, by acting as alleged above, in light of information,

19   facts, and relevant law to the contrary, consciously disregarded the Innovative Insureds' rights and

20   forced Innovative to incur substantial financial losses, thereby inflicting substantial financial

21   damage on the Innovative Insureds.  Indian Harbor ignored the Innovative Insureds' interests and

22   concerns with the requisite intent to injure within the meaning of California Civil Code section

23   3294.  Therefore, Innovative is entitled to recover punitive damages from Indian Harbor in an

24   amount sufficient to punish and to make an example of Indian Harbor and to deter similar conduct

25   in the future.

26   **THIRD CAUSE OF ACTION**

27   **(Declaratory Relief against Does 1 through 10)**

28   34.    Innovative realleges and incorporates by reference paragraphs 1 through 20.

8

**COMPLAINT**

199164

PASICH

1    35.    Innovative contends that the Innovative Insureds were entitled to defense and

2 indemnity with respect to the *Warner Bros.* lawsuit. Innovative is informed and believes, and on

3 that basis alleges, that Does 1 through 10 dispute that the Innovative Insureds were entitled to

4 defense and indemnity with respect to the *Warner Bros.* lawsuit. Therefore, an actual and

5 justiciable controversy exists between Innovative and Does 1 through 10 concerning the matters

6 alleged in this complaint.

7    36.    Innovative seeks a judicial declaration as to the duties of Does 1 through 10,

8 including their duties to pay for the defense and settlement of the *Warner Bros.* lawsuit,

9 confirming that Innovative' contentions, as stated above, are correct. A declaration is necessary in

10 order that the parties' dispute may be resolved and that they may be aware of their respective

11 rights and duties.

12                        **PRAYER FOR RELIEF**

13    WHEREFORE, Innovative prays for relief as follows:

14                 **ON THE FIRST CAUSE OF ACTION**

15    1.    For damages according to proof at the time of trial, plus interest;

16                 **ON THE SECOND CAUSE OF ACTION**

17    2.    For damages according to proof at the time of trial, including the reasonable

18 attorneys' fees incurred in obtaining the benefits due under the Policy, plus interest;

19    3.    For punitive damages in an amount to be determined at the time of trial;

20                 **ON THE THIRD CAUSE OF ACTION**

21    4.    For a declaration in accord with Innovative's contentions stated above;

22                 **ON ALL CAUSES OF ACTION**

23    5.    For the costs of this lawsuit; and

24    6.    For such other, further, or different relief as the Court may deem just and proper.

25 DATED: February 5, 2019              PASICH LLP

26                                By: _____

27                                   Nathan M. Davis
                                     Attorneys for Plaintiff
28

                                      9
                                 **COMPLAINT**

199164

1

## DEMAND FOR JURY TRIAL

2   Plaintiff hereby demands a trial by jury in this action.

3 DATED:  February 5, 2018    PASICH LLP

4

            By: _____

5              Nathan M. Davis

              Attorneys for Plaintiff_____

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PASICH

---

10

**COMPLAINT**

199164

# EXHIBIT A



**Regulatory Office**
Indian Harbor Insurance Company
505 Eagleview Blvd. Suite 100
Dept: Regulatory
Exton, PA 19341-0636
Telephone: 800-688-1840

## ERRORS AND OMISSIONS POLICY DECLARATIONS

**PRODUCER:**   ARC Excess & Surplus, LLC          **PRODUCER NO.:**   00425
113 South Service Road
P.O. Box 9012
Jericho, NY 11753

**POLICY NO.:**   MPP903135402          **RENEWAL OF:**   MPP903135401

THIS IS A CLAIMS MADE AND REPORTED POLICY. DEFENSE EXPENSES ARE WITHIN AND REDUCE THE LIMIT OF LIABILITY. PLEASE REVIEW THIS POLICY CAREFULLY.

Item 1.   **NAMED INSURED:**   INNOVATIVE ARTISTS TALENT; SEE ENDORSEMENT #001

Item 2.   **ADDRESS:**          1505 10TH STREET
          City/State/Zip Code:   SANTA MONICA, CA 90401

Item 3.   **POLICY PERIOD:**

          FROM:   September 12, 2016          TO:   September 12, 2017
          12:01 A.M. Standard Time at the address of the **Named Insured** as stated herein.

Item 4.   **Limits of Liability (Inclusive of Claim Expenses):**
          $  3,000,000          Each Claim
          $  3,000,000          In the Aggregate

Item 5.   **DEDUCTIBLE (Inclusive of Claim Expenses):**
          $  250,000          Each Claim
          $  N/A          Policy Aggregate, if applicable

Item 6.   **PREMIUM:**   $  33,242

XLSPMPLPD 0414          © 2014 X.L. America, Inc.  All Rights Reserved.          Page 1
MURC  09/26/2016          May not be copied without permission.

**EXHIBIT A**
**Page 026**

Item 7.    **PROFESSIONAL SERVICES:**

      Solely in the performance of: Talent manager.

Item 8.    **RETROACTIVE DATE (if applicable):**   September 12, 2014

Item 9.    **ENDORSEMENTS ATTACHED AT POLICY EFFECTIVE DATE:**

| Endorsement Number | Endorsement Form Number | Endorsement Title |
| --- | --- | --- |
| | XLSP-MPL-PF | Errors And Omissions Insurance |
| | PN CW 02 1015 | Privacy Policy |
| | PN CW 05 1010 | Notice To Policyholders - U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") |
| | PN CA 02 0511 | Notice to Policyholders - Important Information to Policyholders - California |
| | PN CW 01 0915 | Notice To Policyholders - Fraud Notice |
| | PN CA 05 0312 | California - Surplus Lines Notice |
| | IL MP 9104 0314 IHIC | In Witness - Indian Harbor Insurance Company |
| Endorsement No. 001 | XLSPMPL159 0312 | Named Insured Endorsement |
| Endorsement No. 002 | XLSPMPL105 0312 | Amendatory Endorsement |
| Endorsement No. 003 | XLSPMPL126 0312 | Self-Insured Retention |
| Endorsement No. 004 | XLSPMPL142 0312 | Business Managers |
| Endorsement No. 005 | XLSPMPL161 0612 | Continuity Coverage |
| Endorsement No. 006 | XL-CASOP 11 10 | Service of Process |

© 2014 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

**SELECT PROFESSIONAL**

**ERRORS AND OMISSIONS INSURANCE**

THIS IS A CLAIMS MADE AND REPORTED POLICY. DEFENSE EXPENSES ARE WITHIN AND REDUCE THE LIMIT OF LIABILITY. PLEASE REVIEW THIS POLICY CAREFULLY.

## A. DEFINITIONS

Whenever used in this policy, the term:

1. **Claim** means a written demand received by the **Insured** for money, services, equitable relief or a request to toll or waive any applicable statute of limitations; provided, however, **claim** does not include any investigation, proceeding or prosecution initiated by any governmental, administrative, regulatory or prosecutorial authority.

2. **Company** means the insurance company named in the Declarations.

3. **Damages** means a monetary judgment or monetary award which the **Insured** is legally obligated to pay, including: statutory damages; punitive, multiplied or exemplary damages, where insurable by law; or pre-judgment and post-judgment interest. **Damages** also means a monetary settlement to which the **Company** agrees on an **Insured's** behalf. However, **damages** does not include:

   a. taxes, fines, penalties, forfeitures or court-imposed monetary sanctions;
   b. the return, restitution, reduction, compromise or refund of commissions, fees, premiums, charges, gratuities or other compensation paid to an **Insured**;
   c. the cost to correct, complete or re-perform any **professional services**;
   d. the cost of compliance with any order for, grant of or agreement to provide non-monetary relief, including services or injunctive relief; or
   e. any amounts uninsurable as a matter of law or public policy.

4. **Defense expenses** means:

   a. reasonable and necessary fees charged and expenses incurred by attorneys designated by the **Company** to represent the **Insured**;

   b. all other reasonable and necessary fees, costs and expenses incurred at the **Company's** request;

   c. premiums on appeal bonds, attachment bonds or similar bonds however, the **Company** is not obligated to apply for or furnish such bonds.

   **Defense expenses** do not include salaries, compensation or overhead paid or incurred by the **Company** or by the **Insured**.

5. **Disciplinary action** means an action brought against the **Insured** by any regulatory agency, disciplinary board, peer review committee or similar entity alleging misconduct in providing **professional services**. **Disciplinary action** does not include criminal investigations or charges.

6. **Insured** means:

   a. the **Named Insured**;

XLSP-MPL-PF 0312                                                                 Page 1 of 8

© 2012 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

MURC 09/26/2016

b.  any **subsidiary**;

c.  any past or present partner, principal, shareholder, officer, director, member, employee or independent contractor, leased employee of the **Named Insured** or a **subsidiary**, but only for **claims** arising from **professional services** rendered in the course and scope of their duties on behalf of the **Named Insured;**

d.  the representatives of the estate of a deceased **Insured** but only for **claims** arising from **professional services** rendered in the course and scope of their duties on behalf of the **Named Insured** or a **subsidiary**;

e.  the guardian, trustee or other fiduciary of a bankrupt **Insured** or an **Insured** who has been judicially declared incompetent, but only for **claims** arising from **professional services** rendered in the course and scope of their duties on behalf of the **Named Insured** or a **subsidiary**; and

f.  the lawful spouse of an **Insured** solely by reason of (a) such spousal status, domestic partner status or (b) such spouse's or domestic partner's ownership interest in property or assets that are sought as recovery for such **claim**. Any sums for which such spouse or domestic partner becomes legally obligated to pay on account of such **claim** shall be deemed **damages**.

7.  **Named Insured** means the person or entity designated in the Declarations as **Named Insured**.

8.  **Personal injury** means malicious prosecution, abuse of process, defamation, false imprisonment, wrongful eviction, libel, slander or violation of a person's right of privacy.

9.  **Policy period** means the period from the effective date and time of this policy to the policy expiration date and time as set forth in the Declarations, unless the policy is terminated earlier, in which event the **policy period** shall end on the date, and time, of such earlier termination.

10. **Professional Services** means those services specified in Item 7. in the Declarations performed by an **Insured** for others for a fee or other remuneration inuring to the benefit of the **Named Insured**.

11. **Retroactive Date** shown in the Declarations is the first date which will be considered for coverage under this policy for any act or omission in the performance of **professional services**.

12. **Subsidiary** means any entity which the **Named Insured** maintains a majority interest. Any entity that becomes a **subsidiary** during the **policy period** and whose annual gross revenue exceeds 15% of the **Named Insured's** gross revenue listed in the application for this policy will be considered an **Insured** only after notice to the **Company** within sixty (60) days of such transaction and any adjustment to the premium or terms and conditions have been agreed by the **Named Insured** and endorsed by the **Company**.

---

**B.  WHAT IS COVERED**

Subject to all terms and conditions of this policy, the **Company** will pay on the **Insured's** behalf **damages** and **defense expenses** arising out of a **claim** first made against the **Insured** during the **policy period**, and reported to the **Company** in writing during the **policy period,** by reason of an actual or alleged act or omission including **personal injury**, in the performance of **professional services**.

---

**C.  SUPPLEMENTARY PAYMENTS**

© 2012 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

MURC 09/26/2016

1.  **Defense of Disciplinary Actions**

    The **Company** will pay up to $25,000 per **policy period** for the defense of **disciplinary actions** brought against the **Insured** and reported to the **Company** during the **policy period**. The Deductible is not applicable and payments will not reduce the Limits of Liability.

2.  **Subpoena Expenses**

    The **Company** will pay up to $7,500 per **policy period** for expenses incurred in assisting the **Insured** in responding to a subpoena which is received and reported in writing to the **Company** during the **policy period** and relates to **professional services**. The Deductible is not applicable and payments will not reduce the Limits of Liability.

3.  **Other Payments**

    The **Company** will reimburse the **Insured** for actual loss of earnings and reasonable expenses incurred for attendance at trial, court-ordered hearings, depositions, arbitration or mediation at the **Company's** request. The **Company** will pay actual expenses incurred but limited to $500 per day, $7,500 per **claim** and $25,000 per **policy period**. The Deductible is not applicable and payments will not reduce the Limits of Liability.

**D.  DEFENSE AND SETTLEMENT**

The **Company** will have the right and duty to defend all covered **claims** brought in the United States, its territories and possessions. While the **Company** may seek the **Insured's** input in selecting defense counsel, the **Company** retains the right to make that selection.

Subject to the **Company's** guidelines, the **Insured** and not the **Company** will have the duty to investigate and defend all **claims** brought outside of the United States of America, its territories and possessions. Payment by the **Company** of covered **defense expenses** with respect to any such **claims** shall be subject to compliance by the **Insured** and the **Insured's** selected defense counsel with the **Company's** reasonable guidelines.

The **Company's** obligation to defend and/or pay any **damages** or **defense expenses** will cease when the Limit of Liability has been exhausted.

The **Company** will not settle any **claim** without the **Insured's** consent. If, however, the **Insured** refuses to consent to any settlement recommended by the **Company** and acceptable to the claiming party, and the opportunity to effectuate that settlement is lost, then the **Company's** liability for that **claim** will not exceed the lesser of the lost settlement amount plus fifty percent (50%) of **damages** and **defense expenses** incurred by the **Insured** in excess of the lost settlement amount, or the remaining Limits of Liability.

**E.  LIMITS OF LIABILITY**

1.  For each **claim**, the limit shown in the Declarations as per **claim** is the maximum amount the **Company** is obligated to pay for the combined total of all covered **damages** and **defense expenses** arising out of each **claim** first made during the **policy period**.

2.  Subject to the per **claim** limitation above, the limit shown in the Declarations as Aggregate is the maximum amount the **Company** is obligated to pay for the combined total of all **damages** and **defense expenses** arising out of any and all **claims** first made during the **policy period**.

3.  Payment of **defense expenses** as well as **damages** reduce and may exhaust the Limits of Liability.

**F.  DEDUCTIBLE**

© 2012 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

MURC 09/26/2016

The **Company's** obligation to pay **defense expenses** and **damages** for each **claim** is triggered when the **Insured** has paid **defense expenses** and/or **damages** in an amount equal to the Deductible shown in the Declarations.

If the **Insured** purchases an Aggregate Deductible option, the **Company's** obligation to pay **defense expenses** and **damages** is triggered when the **Insured** has paid the amount designated in the Declarations as Aggregate Deductible regardless of the number of **claims** made and covered by this policy.

## G. EARLY CLAIM RESOLUTION INCENTIVE

If the **Company** resolves a **claim** as reflected in a settlement agreement, order, dismissal or judgment, within one (1) year following the date that the **claim** is reported in writing to the **Company**, the **Named Insured** will be reimbursed or credited up to 50% of the Deductible they have paid for that **claim**. The maximum reimbursement or credit is $25,000 per **policy period**.

## H. EXCLUSIONS

This insurance does not apply to any **claim**:

1. based on or arising out of acts or omissions that occurred or are alleged to have occurred prior to the effective date of this policy if, on or prior to such date, any **Insured** knew or had a reasonable basis to believe either that a professional duty had been breached or that a **claim** might be made;

2. based on or arising out of acts or omissions which occurred or are alleged to have occurred prior to the **retroactive date** of this policy;

3. based on or arising out of actual or alleged violation of:

   a. the Employee Retirement Income Security Act of 1974;
   b. the Securities Act of 1933;
   c. the Securities Exchange Act of 1934;
   d. any state Blue Sky or securities law;
   e. the Crime Control Act of 1970 (also known as the Racketeer Influenced and Corrupt Practices Act or RICO);

   or any rules, regulations or amendments in relation to such acts, or any similar state, federal or foreign statutes or regulations, including any **claim** based upon common law principles of liability pertaining to the same subject matter as the above-mentioned acts, laws or regulations;

4. for actual or alleged bodily injury, physical harm, sickness or death of any person;

5. for the actual or alleged destruction, diminution in value or loss of use of tangible property;

6. based on or arising out of, or made by or against any business enterprise not named in the Declarations:

   a. which any **Insured** controlled or in which any **Insured** maintained a pecuniary interest at the time of the act, or omission giving rise to the **claim**; or

   b. which arises out of any **Insured's** acts or omissions in an **Insured's** capacity as an officer, director, partner or employee of such enterprise;

© 2012 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

MURC  09/26/2016

For the purposes of this Exclusion, a pecuniary interest will be deemed to exist in any enterprise in which the **Insureds**, individually or collectively, maintain fifteen percent (15%) or more of the equity, debt or other instruments of ownership or control in such enterprise.

7. by or on behalf of an **Insured** against another **Insured**;

8. based on or arising out of the actual or alleged gaining of any profit or advantage to which the **Insured** is not legally entitled;

9. based on or arising out of alleged criminal, intentionally wrongful, fraudulent or malicious acts or omissions. The **Company** will provide a defense for such **claims** through judgment or final adjudication.

10. based on or arising out of any discrimination, humiliation, harassment, or misconduct including but not limited to **claims** based on an individual's race, creed, color, age, gender, national origin, religion, disability, marital status or sexual preference. The **Company** will provide a defense of such **claims** through judgment or final adjudication.

 Exclusions 9. and 10 will not apply to any **Insured** who: (a) did not participate or acquiesce in such act or omission; (b) had no knowledge of or reason to suspect such act or omission; and (c) immediately notified the **Company** in writing after obtaining knowledge of such act or omission.

11. based on or arising out of any actual or alleged anti-trust law violation or any agreement or conspiracy to restrain trade;

12. based on or arising out of or related to any actual or alleged misappropriation of trade secret or infringement of patent, copyright, trademark, trade dress or any other intellectual property right;

13. for the liability which the **Insured** assumed under any contract, agreement, promise, guarantee or warranty, whether written or oral, and whether express or implied, unless the **Insured** would have been legally liable in the absence of such contract, agreement, promise, guarantee or warranty;

14. based on or arising out of actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time. This includes any loss, cost or expense arising out of any requested, demanded, ordered or voluntary, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to or assessing the effects of a pollutant. Pollutant means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**I.   ADDITIONAL TERMS AND CONDITIONS**

1. **Reporting Requirements and Cooperation**

 a. If the **Insured** becomes aware of a **claim**, the **Insured** must:

  (1) advise the **Company** immediately in writing, giving the **Company** all details including the specific act or omission; the injury or damage which has or may result from such act or omission; the circumstances by which the **Insured** first became aware of the act or omission; and, the names, addresses and telephone numbers of all persons who may have knowledge or relevant information;

  (2) preserve all documents and other evidence relating to the **claim**;

  (3) send the **Company** documents relating to the **claim** when requested;

XLSP-MPL-PF 0312

© 2012 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

Page 5 of 8

MURC 09/26/2016

     **(4)** cooperate with the **Company** and defense counsel in the investigation, defense and settlement of a **claim** and enforcement of contribution or indemnification actions against others;

     **(5)** attend hearings, depositions, and trials if requested; and

     **(6)** not admit liability, make any offer of settlement or payments, incur any expense; or assume any obligation arising out of or in any way connected with a **claim** without the **Company's** prior written consent.

  **b.** If, during the **policy period**, the **Insured** becomes aware of an act or omission in the performance of **professional services** that reasonably may be expected to give rise to a **claim**, and if, during the **policy period**, the **Insured** reports to the **Company** in writing: (1) such specific act or omission and the identity of each person and entity responsible for such act or omission; (2) the date on which such act or omission took place; (3) the injury which has or may result from such act or omission and the identity of each person and entity subject to such injury; and (4) and the circumstances by which the **Insured** first became aware of such act or omission; then, any **claim** subsequently made arising out of such specific act or omission shall be deemed to be a **claim** made during the **policy period**.

**2. Claim Reporting Grace Period**

If a **claim** is first made against any **Insured** during the **policy period**, the **Insured** may report it to the **Company** in writing up to and including sixty (60) days following the cancellation, non-renewal or natural expiration of this policy and the **Company** will consider it for coverage as if the **Insured** had reported it in writing to the **Company** within the **policy period**, provided the **Insured** is in compliance with all the terms and conditions of this policy, including payment of all premiums and Deductibles.

**3. Multiple Claims**

Two or more **claims** arising out of the same or related facts, circumstances, situations, transactions or events, or arising out of the same or related acts or omissions, will be considered a single **claim** first made on the earliest of the date that:

  **a.** the first such **claim** was made , regardless of whether such date is before or during the **policy period**; or

  **b.** any of the acts or omissions alleged in such **claim(s)** was first reported under this or any prior policy of insurance, regardless of whether such policy was issued by the **Company**.

**4. Other Insurance**

Such insurance as is provided by this policy shall be excess of any other valid and collectible insurance, whether such insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written specifically as excess and so evidenced by reference to this policy number.

**5. Representations**

The **Insured** understands and acknowledges that the decision to issue this policy was based upon the information provided in the application, including any supplements, attachments and replies to underwriter's inquiries. The **Insured** represents and warrants that all such information is true, accurate and complete.

**6. Extended Claim Reporting Option**

If the **Insured** or the **Company** cancels or does not renew this policy, the **Named Insured** shall have the option to purchase an Extended Claim Reporting Endorsement (ERP), extending the period of time during

© 2012 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

MURC 09/26/2016

which **claims** may be reported but only with respect to **claims** arising out of **professional services** rendered prior to the end of the **policy period** and otherwise covered by this policy.

The **Named Insured** may purchase such ERP only if:

**a.**   prior to the end of the **policy period**, the **Named Insured** was in compliance with all the terms and conditions of this policy, including payment of all premiums and deductibles when due;

**b.**   the **Named Insured** agrees that the additional premium paid for the ERP is non-refundable;

**c.**   the **Named Insured** made no material misrepresentation in the application, any supplements, attachments or replies to underwriter's inquiries; and

**d.**   the **Named Insured** exercises this option and pays the additional premium within sixty (60) days following the end of the **policy period**.

The additional premium for an ERP shall be: (a) seventy-five percent (75%) of the annual premium for a one-year ERP; or (b) one hundred (100%) of the annual premium for a two-year ERP; or one hundred and fifty (150%) of the annual premium for a three-year ERP.

**7.   Cancellation/Nonrenewal**

The **Named Insured** or the **Company** can cancel this policy by notifying the other in writing.

If the **Company** cancels or non-renews this policy, a written notice of cancellation or non-renewal will be sent to the **Named Insured** at the address shown in the Declarations. The notice will state the date on which the cancellation or non-renewal will become effective. The effective date of cancellation or non-renewal will be not less than sixty (60) days after notice is mailed to the **Named Insured** unless cancellation is for non-payment of premium in which case the effective date of cancellation will be not be less than ten (10) days after notice is mailed. The effective date of cancellation or non-renewal as stated therein will become the end of the **policy period** and return premium will be calculated on a pro rata basis.

If the **Named Insured** cancels, the return premium will be calculated at the industry standard short rate.

**8.   Non-Waiver**

The **Company's** failure to enforce any terms, provisions or conditions, or the **Company's** failure to exercise any right or privilege, shall not operate or be construed as a waiver of any other terms, provisions, conditions, rights or privileges.

**9.   Named Insured as Sole Agent**

The first **Named Insured** in Item 1. in the Declarations is the sole agent and will act on behalf of all of **Insureds**.

**10. Changes in Control**

If, during the **policy period**, any of the following events occur:

**a.**   the acquisition of any **Named Insured**, or all or substantially all of its assets, by another entity or the merger or consolidation of any **Named Insured** into or with another entity such that the **Named Insured** is not the surviving entity; or

© 2012 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

**EXHIBIT A**
**Page 034**

    **b.**  the appointment of a receiver, conservator, trustee, liquidator or rehabilitator, or any similar official, for or with respect to any **Named Insured**;

this policy will continue in full force and effect with respect to **Claims** arising out of **professional services** rendered before such event. **Claims** arising out of **professional services** rendered after such event will not be considered for coverage.

After either such event, this policy may not be canceled and the entire premium will be deemed fully earned.

## 11. Assignment

The **Insured's** interests under this policy may not be assigned without the **Company's** written consent.

## 12. Territory

This policy applies to **claims** arising from **professional services** rendered worldwide.

This policy shall not apply to any **claim** arising from **professional services** which are in violation of the laws of the United States, including, but not limited to, U.S. economic or trade sanctions or export control laws administered by the U. S. Treasury, State Department or Commerce Department

XLSP-MPL-PF 0312

© 2012 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

Page 8 of 8

MURC  09/26/2016

**IN WITNESS**

**INDIAN HARBOR INSURANCE COMPANY**

REGULATORY OFFICE
505 EAGLEVIEW BOULEVARD, SUITE 100
DEPARTMENT:  REGULATORY
EXTON, PA  19341-1120
PHONE:  800-688-1840

It is hereby agreed and understood that the following In Witness Clause supercedes any and all other In Witness clauses in this policy.

All other provisions remain unchanged.

IN WITNESS WHEREOF, the Company has caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by a duly authorized representative of the Company.

_____          _____
Joseph Tocco                                               Toni Ann Perkins
President                                                        Secretary

IL MP 9104 0314 IHIC
©2014 X.L. America, Inc.  All rights reserved.  May not be copied without permission.
MURC  09/26/2016

ENDORSEMENT #001

This endorsement, effective 12:01 a.m., September 12, 2016 forms a part of Policy No. MPP903135402 issued to INNOVATIVE ARTISTS TALENT; SEE ENDORSEMENT #001 by Indian Harbor Insurance Company.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**NAMED INSURED ENDORSEMENT**

This endorsement modifies insurance provided under the following:

**ERRORS AND OMISSIONS POLICY**

In consideration of the premium paid, it is hereby understood and agreed that Item 1. NAMED INSURED on the Declarations of the Policy is deleted in its entirety and replaced with the following:

Item 1.     NAMED INSURED:     INNOVATIVE ARTISTS TALENT AND LITERARY AGENCY, INC.; INNOVATIVE ARTISTS (BTL); INNOVATIVE ARTISTS TALENT & LITERARY AGENCY NY, INC.; INNOVATIVE ARTISTS YOUNG TALENT DIVISION; INNOVATIVE ARTISTS TALENT & LITERARY AGENCY, LLC; INNOVATVE ARTISTS TALENT & LITERARY AGENCY, INC. 401(K) PROFIT SHARING PLAN; INNOVATIVE ARTISTS COMMERCIAL AND VOICEOVER, INC.; INNOVATIVE ARTISTS CHICAGO, INC.; INNOVATIVE ARTISTS COMMERCIAL DIVISION, LLC; INNOVATIVE ARTISTS YOUNG TALENT & LITERARY AGENCY NY, INC.; INNOVATIVE ON TENTH STREET , LLC; INNOVATIVE ASTISTS DESIGN & ART; INNOVATIVE ARTISTS VOICEOVER DIVISION, LLC; INNOVATIVE ARTISTS, LLC; INNOVATIVE ARTISTS COMEDY DIVISION, LLC; INNOVATIVE ARTISTS BRANDING & LICENSING, LLC; INNOVATIVE ARTISTS DIGITAL MEDIA, LLC; SCOTT HARRIS, AN INDIVIDUAL;

All other provisions of this policy remain unchanged.

**EXHIBIT A**
**Page 037**

ENDORSEMENT #002

This endorsement, effective 12:01 a.m., September 12, 2016 forms a part of Policy No. MPP903135402 issued to INNOVATIVE ARTISTS TALENT; SEE ENDORSEMENT #001 by Indian Harbor Insurance Company.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**AMENDATORY ENDORSEMENT**

This endorsement modifies insurance provided under the following:

**ERRORS AND OMISSIONS POLICY**

**XL MPL + Endorsement**

In consideration of the premium charged, it is understood and agreed that **Section A. DEFINTIONS, damages, personal injury and subsidiary** are deleted in its entirety and replaced as follows:

3. **Damages** means a monetary judgment or monetary award which the **Insured** is legally obligated to pay, including: statutory damages; punitive, multiplied or exemplary damages, where it is deemed permitted under the laws and public policy of the applicable jurisdiction by law; or pre-judgment and post-judgment interest.  **Damages** also means a monetary settlement to which the **Company** agrees on an **Insured's** behalf. However, **damages** does not include:

    a. taxes, fines, penalties, forfeitures or court-imposed monetary sanctions;
    b. the return, restitution, reduction, compromise or refund of commissions, fees, premiums, charges, gratuities or other compensation paid to an **Insured**;
    c. the cost to correct, complete or re-perform any **professional services**;
    d. the cost of compliance with any order for, grant of or agreement to provide non-monetary relief, including services or injunctive relief; or
    e. any amounts uninsurable as a matter of law or public policy.

The terms "applicable jurisdiction" shall mean for the purposes of this endorsement that jurisdiction most favorable to the insurability of punitive or exemplary damages provided that the jurisdiction must be:

    a. where the punitive or exemplary damages were awarded or imposed; or

    b. where any act which forms the basis of the **Claim** took place; or
    c. where any "**Insured**" is incorporated, resides, or has its principal place of business

8. **Personal injury** means:

    a. Malicious prosecution, abuse of process, defamation, false imprisonment, wrongful eviction, libel, slander or violation of a person's right of privacy.

    b. Plagiarism, piracy or misappropriation of ideas or style of doing business;

    c. Infringement or misappropriation of copyright, title, slogan, trademark, trade name, trade dress, logo, service mark or service name.

**EXHIBIT A**
**Page 038**

Provided, however, that **Personal injury** shall not include any of the foregoing offenses which arise out of, in the course of, result from or relate to advertising, broadcasting or telecasting activities conducted by or on behalf of any **Insured**.

12. **Subsidiary** means any entity which the **Named Insured** maintains a majority interest. Any entity that becomes a **subsidiary** during the **policy period** and whose annual gross revenue exceeds 25% of the **Named Insured's** gross revenue listed in the application for this policy will be considered an **Insured** only after notice to the **Company** within sixty (60) days of such transaction and any adjustment to the premium or terms and conditions have been agreed by the **Named Insured** and endorsed by the **Company**.

It is further understood that **Section H. EXCLUSIONS** Items **6.**, **8.** and **12.** are deleted in its entirety and replaced as follows:

6. based on or arising out of, or made by or against any business enterprise not named in the Declarations:

    a. which any **Insured** controlled or in which any **Insured** maintained a pecuniary interest at the time of the act, or omission giving rise to the **claim**; or

    b. which arises out of any **Insured's** acts or omissions in an **Insured's** capacity as an officer, director, partner or employee of such enterprise;

For the purposes of this Exclusion, a pecuniary interest will be deemed to exist in any enterprise in which the **Insureds**, individually or collectively, maintain twenty five percent (25%) or more of the equity, debt or other instruments of ownership or control in such enterprise.

8. based on or arising out of the actual or alleged gaining of any profit or advantage to which the **Insured** is not legally entitled. The **Company** will provide a defense for such **claims** through judgment or final adjudication.

12. based on or arising out of or related to actual or alleged improper gaining or misuse of materials or trade secrets or infringement of patent.

All other provisions of this policy remain unchanged.

ENDORSEMENT #003

This endorsement, effective 12:01 a.m., September 12, 2016 forms a part of Policy No. MPP903135402 issued to INNOVATIVE ARTISTS TALENT; SEE ENDORSEMENT #001 by Indian Harbor Insurance Company.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**SELF-INSURED RETENTION**

This endorsement modifies insurance provided under the following:

**ERRORS AND OMISSIONS POLICY**

In consideration of the premium charged, it is understood and agreed that the Policy is amended as follows:

Section **D. DEFENSE AND SETTLEMENT** is deleted in its entirety and replaced with the following:

**D.  DEFENSE AND SETTLEMENT**

1. The **Company** will have the right and duty to defend all covered **claims** brought in the United States, its territories and possessions.  However, until satisfaction of the Self-Insured Retention by the **Insured**, the **Insured** will have the right to appoint counsel, subject to the **Company's** written consent and approval, which counsel shall be paid in accordance to the **Company's** usual and customary rates. Where the **Insured** has the right to appoint counsel, and has exercised that right, the **Insured** will provide the **Company** with status reports as the **Company** may request and otherwise comply with the **Company's** reasonable guidelines, and the **Insured** will require that its appointed counsel to comply with such guidelines as well.  Upon satisfaction of the Self-Insured Retention by the **Insured**, the **Company** will have the right to appoint counsel of its choice.

2. Subject to the **Company's** guidelines, the **Insured** and not the **Company** will have the duty to investigate and defend all **claims** brought outside of the United States of America, its territories and possessions. Payment by the **Company** of covered **defense expenses** with respect to any such **claims** shall be subject to compliance by the **Insured** and the **Insured's** selected defense counsel with the **Company's** reasonable guidelines.

3. The **Company's** obligation to defend and/or pay any **damages** or **defense expenses** will cease when the Limit of Liability has been exhausted.

4. The **Company** will not settle any **claim** without the **Insured's** consent.  If, however, the **Insured** refuses to consent to any settlement recommended by the **Company** and acceptable to the claiming party, and the opportunity to effectuate that settlement is lost, then the **Company's** liability for that **claim** will not exceed the lesser of the lost settlement amount plus fifty percent (50%) of **damages** and **defense expenses** incurred by the **Insured** in excess of the lost settlement amount, or the remaining Limits of Liability.

Wherever appearing in the Policy, the word "Deductible" is replaced by "Self-Insured Retention."

All other provisions of this policy remain unchanged.

© 2012 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

**EXHIBIT A
Page 040**

ENDORSEMENT #004

This endorsement, effective 12:01 a.m., September 12, 2016 forms a part of Policy No. MPP903135402 issued to INNOVATIVE ARTISTS TALENT; SEE ENDORSEMENT #001 by Indian Harbor Insurance Company.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**BUSINESS MANAGERS**

This endorsement modifies insurance provided under the following:

**ERRORS AND OMISSIONS POLICY**

In consideration of the premium charged, it is understood and agreed that **Section H. EXCLUSIONS** is amended to include the following new exclusions:

> based on or arising out of the syndication, promotion, offer or sale of any limited or general partnership or any interest therein;

> based on or arising out of a loss alleged to have been sustained due to the promising or guaranteeing of any rate of return;

> based on or arising out of the purchase or sale of securities for which the **Insured** received commission or other remuneration or where the **Insured** had an equity interest in the issue of such securities or financial instruments;

> based on or arising out of a cease and desist order, the insolvency, bankruptcy, licensing, receivership, liquidation or inability to pay of any insurer, trust, organization or other vehicle directly or indirectly in which any **Insured** has placed or obtained insurance coverage or placed the funds of a client or account (if, at the time, the institution had an A.M. Best rating of A or better at the time of placement);

> based on or arising out of the **Insured's** rendering of, or failure to render a certified opinion on the financial condition of any individual or entity;

> based on or arising out of any noncompliance with any statute or regulation.

All other provisions of this policy remain unchanged.

**EXHIBIT A
Page 041**

**ENDORSEMENT #005**

This endorsement, effective 12:01 a.m., September 12, 2016 forms a part of Policy No. MPP903135402 issued to INNOVATIVE ARTISTS TALENT; SEE ENDORSEMENT #001 by Indian Harbor Insurance Company.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**CONTINUITY COVERAGE**

This endorsement modifies insurance provided under the following:

**ERRORS AND OMISSIONS POLICY**

In consideration of the premium charged, it is understood and agreed that **Section H. EXCLUSIONS**, Item 1. is deleted in its entirety and replaced with the following:

1.  based on or arising out of acts or omissions that occurred or are alleged to have occurred prior to the earlier of:

    a.  the effective date of this policy; or

    b.  the effective date of the first policy issued by the **Company** and continuously renewed of which this policy is the last in the series of continuously renewed policies;

    if, on or prior to such date, any **Insured** knew or had a reasonable basis to believe either that a duty had been breached or that a **claim** might be made;

All other provisions of this policy remain unchanged.

**EXHIBIT A**
**Page 042**

**ENDORSEMENT #006**

This endorsement, effective 12:01 a.m., September 12, 2016 forms a part of Policy No. MPP903135402 issued to INNOVATIVE ARTISTS TALENT; SEE ENDORSEMENT #001 by Indian Harbor Insurance Company

**SERVICE OF PROCESS**

The Commissioner of Insurance of the State of California is hereby designated the true and lawful attorney of the Company upon whom may be served all lawful process in any action, suit or proceeding arising out of this policy. The Company further designates:

John Oster
1990 North California Boulevard
Suite 740
Walnut Creek, CA 94596

as its agent in California to whom such process shall be forwarded by the Commissioner of Insurance.

For Illinois exposures, the Insurer further designates the Director of the Illinois Division of Insurance and his successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of an Illinois exposure and this contract of insurance.

All other terms and conditions of this policy remain unchanged.

_____
(Authorized Representative)

XL-CASOP 11 10
MURC  09/26/2016

© 2010 X.L. America, Inc. All Rights Reserved.
May not be copied without permission.

**EXHIBIT A**
**Page 043**

ENDORSEMENT #007

This endorsement, effective 12:01 a.m., September 12, 2016 forms a part of Policy No. MPP903135402 issued to INNOVATIVE ARTISTS TALENT; SEE ENDORSEMENT #001 by Indian Harbor Insurance Company.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**AMENDATORY ENDORSEMENT**

This endorsement modifies insurance provided under the following:

**ERRORS AND OMISSIONS POLICY**

In consideration of the premium charged, it is hereby understood and agreed that **Item 1. Named Insured** of the policy declarations page has been amended to **include** the following entity:

**Item 1. Named Insured:**

Innovative Artists Broadcast Division, LLC

All other provisions of this policy remain unchanged.

**EXHIBIT A**
**Page 044**

# EXHIBIT B

**EXHIBIT A**
**Page 045**

1  KELLY M. KLAUS (State Bar No. 161091)
   kelly.klaus@mto.com
2  ALLYSON R. BENNETT (State Bar No. 302090)
   allyson.bennett@mto.com
3  MUNGER, TOLLES & OLSON LLP
   355 South Grand Avenue, Thirty-Fifth Floor
4  Los Angeles, California 90071-1560
   Telephone:  (213) 683-9100
5  Facsimile:  (213) 687-3702

6  Attorneys for Plaintiff

7

UNITED STATES DISTRICT COURT

8

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

9

10

| WARNER BROS. ENTERTAINMENT INC., | Case No. 2:16-cv-7902 |
|---|---|
| Plaintiff, | **FIRST AMENDED COMPLAINT FOR COPYRIGHT INFRINGEMENT AND VIOLATION OF DIGITAL MILLENNIUM COPYRIGHT ACT** |
| vs. | |
| INNOVATIVE ARTISTS TALENT AND LITERARY AGENCY, INC.; INNOVATIVE ARTISTS; INNOVATIVE ARTISTS, LLC; and INNOVATIVE ARTISTS TALENT AND LITERARY AGENCY N.Y., INC., | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1      Plaintiff Warner Bros. Entertainment Inc. ("Warner Bros." or "Plaintiff"),

2  through its undersigned counsel, brings this Complaint against Defendants

3  Innovative Artists Talent and Literary Agency, Inc.; Innovative Artists; Innovative

4  Artists, LLC; and Innovative Artists Talent and Literary Agency N.Y., Inc.

5  (collectively, "Innovative Artists") for infringing Plaintiff's exclusive rights under

6  the Copyright Act (17 U.S.C. § 101 *et seq.*) and for violating the Digital Millennium

7  Copyright Act (§ 1201 *et seq.*) ("DMCA").  This Court has subject matter

8  jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a), and 17 U.S.C. §§ 501(b),

9  1203(a).  Plaintiff alleges, on personal knowledge as to itself and information and

10  belief as to others, as follows:

11                     **INTRODUCTION**

12      1.    Beginning in late 2015, Innovative Artists set up and operated an illegal

13  digital distribution platform that copied movies and then distributed copies and

14  streamed public performances of those movies to numerous people inside and

15  outside of the agency.  Innovative Artists stocked its platform with copies of

16  Plaintiff's works, including copies that Innovative Artists made by ripping awards

17  consideration "screener" DVDs that Plaintiff sent to the agency to deliver to one of

18  its clients.  In some cases, Innovative Artists' infringing copies of Plaintiff's works

19  quickly made their way from Innovative Artists' platform to online piracy sites

20  while those movies were still being made available to the general public exclusively

21  in theaters.  The actions Plaintiff complains of are blatantly illegal.  That illegality

22  would be obvious to anyone, but especially to Innovative Artists, a talent agency

23  that claims to promote the interests of actors, writers, directors and others whose

24  livelihoods depend critically on respect for copyright.

25      2.    Plaintiff discovered Innovative Artists' unlawful conduct after

26  unauthorized copies of two of its movies, *Creed* and *In the Heart of the Sea*,

27  appeared online in December 2015, shortly after Plaintiff distributed screeners of

28  those movies to members of the Academy of Motion Picture Arts & Sciences.

-1-

**EXHIBIT A**
**Page 047**

1  Because the screeners were "watermarked"—embedded with markers that identified
2  their intended recipients—Plaintiff traced the copies to screeners that Plaintiff had
3  sent to an Innovative Artists client, in care of the agency.  Instead of forwarding the
4  screeners directly to its client, Innovative Artists illegally used ripping software to
5  bypass the technical measures that prevent access to and copying of the content on
6  DVDs.  Innovative Artists then copied the movies to its digital distribution platform,
7  where those copies became available for immediate downloading and streaming
8  along with infringing copies of many other copyrighted movies.

9      3.     Plaintiff brings this action to remedy Innovative Artists' violation of its
10  rights and for an injunction barring Innovative Artists from violating those rights in
11  the future.

12                  **THE PARTIES**

13      4.     Plaintiff Warner Bros. Entertainment Inc. is a corporation duly
14  incorporated under the laws of the State of Delaware with its principal place of
15  business in Burbank, California.  Warner Bros. and its affiliates produce, distribute
16  and license popular motion picture and television content.  Warner Bros. owns or
17  controls the copyrights and exclusive rights in the content that it or its affiliates
18  produce or distribute (the "Copyrighted Works").

19      5.     Warner Bros. has obtained Certificates of Copyright Registration for
20  the Copyrighted Works.  Exhibit A includes several of the Copyrighted Works,
21  along with their registration numbers, that are at issue here.

22      6.     Defendant Innovative Artists Talent And Literary Agency, Inc. is a
23  corporation duly incorporated under the laws of the State of California with its
24  principal place of business in Santa Monica, California.

25      7.     Defendant Innovative Artists is a corporation duly incorporated under
26  the laws of the State of California with its principal place of business in Santa
27  Monica, California.

28

-2-

**EXHIBIT A**
**Page 048**

1       8.    Defendant Innovative Artists, LLC is a corporation duly incorporated

2 under the laws of the State of California with its principal place of business in Santa

3 Monica, California.

4       9.    Defendant Innovative Artists Talent and Literary Agency N.Y., Inc. is a

5 corporation duly incorporated under the laws of the State of Delaware with its

6 principal place of business in New York. It also has offices in California.

7                       **JURISDICTION AND VENUE**

8       10.   This Court has subject matter jurisdiction over this Complaint pursuant

9 to 28 U.S.C. §§ 1331, 1338(a), and 17 U.S.C. §§ 501(b), 1203(a).

10      11.   Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)

11 1400(a).

12                       **BACKGROUND FACTS**

13 **Plaintiff and Its Copyrighted Works**

14      12.   Plaintiff or its affiliates produce and distribute some of the most

15 popular and critically acclaimed motion pictures and television shows in the world.

16      13.   Plaintiff has invested (and continues to invest) substantial resources and

17 effort each year to develop, produce and exploit its Copyrighted Works.

18      14.   Plaintiff owns or co-owns and has the exclusive U.S. rights (among

19 others) to reproduce, distribute and publicly perform each of its Copyrighted Works.

20 **Plaintiff's Screeners and Measures to Protect Content on DVDs**

21      15.   Plaintiff and many other copyright owners in the entertainment industry

22 send screeners of their copyrighted works to voting members of the academies that

23 annually bestow awards for outstanding achievement in the creation of motion

24 pictures. A screener copy of a movie typically is fixed on a DVD. Plaintiff sends

25 screeners so that voting members of an academy (e.g., the Academy of Motion

26 Picture Arts and Sciences) can watch Plaintiff's works in evaluating whether to vote

27 for those works for an award (e.g., an Academy Award).

28

-3-

FIRST AMENDED COMPLAINT

16.     Plaintiff provides screeners on the understanding and agreement of the recipient that the underlying content is owned by Plaintiff; that Plaintiff is providing the screener to the recipient solely for their personal viewing in connection with awards consideration; and that the recipient may not copy, sell or otherwise disseminate the screener's contents.

17.     Screeners present significant content security risks for Plaintiff.  The underlying copyrighted content on the DVDs is in digital format; if unprotected, that content can be copied repeatedly without any degradation in quality.  Once a version of Plaintiff's content is available "in the clear"—i.e., without any technological protection—the content can be copied, distributed and streamed without numerical or geographic limitation.  In addition, screener DVDs often contain very popular and critically acclaimed content, including in some cases movies that have yet to be theatrically released.  Plaintiff therefore generally takes additional steps to protect its content when it sends out certain screener DVDs.

18.     First, as with content it commercially distributes on DVDs and Blu-ray discs, Plaintiff sends screeners on DVDs that utilize technological protection measures (or "TPMs").  In the case of screener DVDs, Plaintiff utilizes Discs protected with CSS or Patronus.  In the ordinary course of their operation, the TPMs that Plaintiff uses protect against unauthorized access to and copying of the copyrighted content on the DVDs.

19.     CSS protects the audiovisual content on Plaintiff's DVDs through the use of encryption and keys embedded in the content recorded on the physical discs.

20.     Patronus provides additional protection for DVD content by encapsulating the underlying files and further preventing access to the embedded content.

21.     In the ordinary course of their operation, CSS, Patronus and other TPMs ensure that the content embedded on the DVD will be accessible only for contemporaneous playback through an authorized device.  These licensing and

-4-

1  technology systems allow copyright owners to distribute their content on DVDs

2  while limiting unauthorized copying or redistribution of that content.

3    22.   Second, Plaintiff marks screeners with individual digital watermarks,

4  traceable to the recipient. Invisible to the viewer, the watermark allows Plaintiff to

5  determine the origin of illegal copies that have been uploaded to the internet.

6  **Innovative Artists' Unlawful Digital Distribution Platform and Infringement of**

7  **Plaintiff's Copyrights**

8    23.   Innovative Artists is a talent and literary agency.

9    24.   In early 2015, Innovative Artists began using a Google cloud-based

10 platform ("Google Drive") for email and file services.

11   25.   In or around November 2015, Innovative Artists decided that it would

12 distribute movies using its Google Drive account. Innovative Artists' technology

13 department set up the digital distribution platform as a file-sharing folder on the

14 agency's Google Drive account. Innovative Artists then used the platform to upload

15 and distribute digital copies of films.

16   26.   Innovative Artists' digital distribution platform included copies of the

17 Copyrighted Works.

18   27.   Innovative Artists did not have Plaintiff's authorization, permission or

19 consent to upload copies of the Copyrighted Works to the digital distribution

20 platform.

21   28.   Innovative Artists did not have Plaintiff's authorization, permission or

22 consent to exercise any of Plaintiff's other exclusive rights under copyright with

23 respect to the Copyrighted Works.

24   29.   Those without an Innovative Artists email address could not

25 automatically access the digital distribution platform. However, Innovative Artists

26 executives directed staff to provide access credentials to numerous managers, family

27 members, friends and others outside of the agency.

28

-5-

30.     People inside and outside the agency with access to the digital distribution platform could and did download copies of the Copyrighted Works to other computer media.  Those with access could choose instead to request that Innovative Artists' digital distribution platform stream performances of the content to them.

31.     Innovative Artists knew copies obtained from its digital distribution platform would be further disseminated.  For example, in one case, Innovative Artists granted access to all files within the platform to an individual at another company, knowing that the other individual intended to distribute copies of the movies in the file to others.

32.     Innovative Artists traded access to some of its unauthorized digital copies of movies in exchange for unauthorized copies of content possessed by third parties.  For example, in one case, Innovative Artists granted an assistant at another company access to the digital distribution platform because the assistant had provided a screener to Innovative Artists for a title that was not already on the platform.

33.     No person who downloaded or requested a stream of the Copyrighted Works from Innovative Artists' digital distribution platform had Plaintiff's authorization, permission or consent to do so.

**Innovative Artists' Illegal Circumvention of the TPMs on Plaintiff's Screener DVDs**

34.     In its capacity as a talent agency, Innovative Artists receives screeners from Plaintiff on behalf of clients who are members of one or more awards groups.  As with other similar materials Innovative Artists receives on behalf of its principals, the senders and recipients understand that Innovative Artists will forward the materials to those principals.

35.     In some cases, however, Innovative Artists did not simply give the DVDs to the intended recipient.  Innovative Artists instead would "rip" the DVDs—

-6-

FIRST AMENDED COMPLAINT

1  i.e., it would illegally use circumvention software to bypass or remove the TPMs on
2  the DVDs—and then make digital copies of the embedded content to a "folder" on a
3  third-party server.

4      36.    Innovative Artists obtained digital copies of *Creed* and *In the Heart of*
5  *the Sea* by circumventing the TPMs on the DVDs that Plaintiff sent to Innovative
6  Artists' client.

7  **Plaintiff Discovers Innovative Artists' Unlawful Conduct**

8      37.    On December 20, 2015, Plaintiff received two alerts from Deluxe
9  Entertainment Services Group ("Deluxe"), a company with which Plaintiff contracts
10  to provide content security for its screeners.  Deluxe informed Plaintiff that *Creed*
11  and *In the Heart of the Sea* had been pirated and were available online via an illegal
12  peer-to-peer ("P2P") site.  Deluxe informed Plaintiff that, based on its watermark
13  analysis, the copies of *Creed* and *In the Heart of the Sea* were ripped from screeners
14  sent to an individual who Plaintiff later determined was an Innovative Artists' client.
15  That client had designated Innovative Artists as the party to receive the screeners on
16  the client's behalf.

17      38.    Plaintiff contacted Innovative Artists, which thereafter terminated the
18  digital distribution platform.  Innovative Artists sent Plaintiff logs identifying the
19  names or user names of persons who had downloaded movies from the distribution
20  platform.  A log titled "All m4v downloaded files from dec 11 thru dec 22-
21  AuditReport-20151223-1656" (but which appears to contain downloads only from
22  December 18, 2015 through December 22, 2015) showed that the Copyrighted
23  Works had been downloaded from Innovative Artists' distribution platform by more
24  than twenty users just during the short period covered by the log.  The log did not
25  provide data for the number or identification of individuals who had streamed the
26  Copyrighted Works or who had further distributed downloaded copies.

27
28

-7-

**Innovative Artists' Digital Distribution Platform Causes Plaintiff Irreparable Harm**

39.     Plaintiff will continue sending screeners to awards group members.  In addition, Plaintiff continues to release Copyrighted Works on DVDs.

40.     In connection with Plaintiff's investigation, Innovative Artists represented that the agency terminated the digital distribution platform.  Innovative Artists has not, however, entered into a formal agreement, enforceable by injunctive relief, preventing it from using Plaintiff's works to populate a similar digital distribution platform now or in the future.

41.     Circumvention and infringement such as committed by Innovative Artists causes immediate and irreparable harm to Plaintiff.  The digital distribution platform included some of Plaintiff's most valuable and critically acclaimed Copyrighted Works.  Because Innovative Artists stored digital copies of the Copyrighted Works in the clear—i.e., without TPMs limiting access or copying—the Copyrighted Works were, and if reposted will be, at risk of limitless copying and distribution.  As noted, at least two of the Copyrighted Works were made available via a P2P BitTorrent site from copies obtained through Innovative Artists' distribution platform.

## FIRST CAUSE OF ACTION

### (Copyright Infringement, 17 U.S.C. § 106)

42.     Plaintiff incorporates herein by reference each and every averment contained in paragraphs 1 through 41 inclusive.

43.     Plaintiff is the owner of exclusive rights of copyright, as set forth in § 106 of the Copyright Act, in each of its Copyrighted Works.

44.     Innovative Artists has infringed Plaintiff's exclusive rights, including the rights to reproduce, distribute, or publicly perform the Copyrighted Works, in violation of 17 U.S.C. § 106(1), (3), (4).

-8-

1    45.   Innovative Artists has never had Plaintiff's authorization to exercise
2 any of the rights of copyright with respect to any Copyrighted Work.

3    46.   Innovative Artists' acts of infringement are willful, in disregard of and
4 with indifference to Plaintiff's rights.

5    47.   As a direct and proximate result of the infringements by Innovative
6 Artists, Plaintiff is entitled to actual damages and Innovative Artists' profits from its
7 infringing activity with respect to each Copyrighted Work, under 17 U.S.C. § 504,
8 in amounts to be proven at trial.

9    48.   Alternatively, at its election, Plaintiff is entitled to statutory damages,
10 up to the maximum amount of $150,000 per statutory award by virtue of Innovative
11 Artists' willful infringement, or for such other amounts as may be proper under 17
12 U.S.C. § 504(c).

13    49.   Plaintiff further is entitled to recover its attorneys' fees and full costs
14 pursuant to 17 U.S.C. § 505.

15    50.   As a direct and proximate result of the foregoing acts and conduct,
16 Plaintiff has sustained and will continue to sustain substantial, immediate and
17 irreparable injury, for which there is no adequate remedy at law.  Unless enjoined
18 and restrained by this Court, Innovative Artists will continue to infringe Plaintiff's
19 rights in its Copyrighted Works.  Plaintiff is entitled to injunctive relief under 17
20 U.S.C. § 502.

21              **SECOND CAUSE OF ACTION**

22 **(Violation of the Digital Millennium Copyright Act, 17 U.S.C. §§ 1201, *et seq.*)**

23    51.   Plaintiff incorporates herein by reference each and every averment
24 contained in paragraphs 1 through 50 inclusive.

25    52.   Section 1201(a)(1)(A) of the DMCA provides in pertinent part that
26 "[n]o person shall circumvent a technological measure that effectively controls
27 access to a work protected under [the Copyright Act]."  17 U.S.C. § 1201(a)(1)(A).

28

-9-

FIRST AMENDED COMPLAINT

**EXHIBIT A
Page 055**

53.    Plaintiff uses TPMs to effectively control access to, and to protect the exclusive rights of copyright in, motion pictures, television shows and other works protected by the Copyright Act.

54.    Innovative Artists circumvented the TPMs on DVDs containing Copyrighted Works, and thereby violated 17 U.S.C. § 1201(a)(1)(A).

55.    Plaintiff has sustained and will sustain actual damage as the result of Innovative Artists' DMCA violations, including, among other things, damages to the value of the Copyrighted Works and the reduction in Plaintiff's goodwill in the Copyrighted Works.  17 U.S.C. § 1203(c)(2).

56.    Alternatively, and at its election, Plaintiff is entitled to an award of the maximum statutory damages as permitted by the DMCA.  17 U.S.C. § 1203(c)(3).

57.    Innovative Artists' conduct, unless enjoined and restrained by this Court, will cause immediate and irreparable injury to Plaintiff, who has no adequate remedy at law.  Pursuant to 17 U.S.C. § 1203(b)(2), Plaintiff is entitled to preliminary and permanent injunctions prohibiting Innovative Artists' further violations of § 1201.

58.    Plaintiff is further entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 1203.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief:

1.    For Plaintiff's damages and Innovative Artists' profits from its infringing activity, in such amount as may be found; alternatively, at Plaintiff's election, for maximum statutory damages.

2.    For permanent injunctions enjoining Innovative Artists, and all persons acting in concert or participation with it, from reproducing, distributing, publicly performing, or otherwise infringing in any manner any copyrighted work owned or controlled by Plaintiff (including without limitation any Copyrighted Work) and

-10-

FIRST AMENDED COMPLAINT

1  from circumventing TPMs safeguarding access to any copyrighted work owned or

2  controlled by Plaintiff (including without limitation any Copyrighted Work).

3        3.      For prejudgment interest according to law.

4        4.      For Plaintiff's attorneys' fees and full costs incurred in this action

5  pursuant to 17 U.S.C. §§ 505 and 1203.

6        5.      For all such further and additional relief, in law or in equity, to which

7  Plaintiff may be entitled or which the Court deems just and proper.

8                        **DEMAND FOR JURY TRIAL**

9        Plaintiff demands a trial by jury on all issues triable by jury.

10

11

12  DATED: January 10, 2017              MUNGER, TOLLES & OLSON LLP

13

14

15                              By:     _/s/ Kelly M. Klaus_

16                              KELLY M. KLAUS

17                              Attorneys for Plaintiff

18

19

20

21

22

23

24

25

26

27

28

-11-

# Superior Court of California
# County of Los Angeles



# ALTERNATIVE DISPUTE RESOLUTION (ADR)
# INFORMATION PACKET

The person who files a civil lawsuit (plaintiff) must include the ADR information Packet with the complaint when serving the defendant. Cross-complainants must serve the ADR Information Packet on any new parties named to the action together with the cross-complaint.

There are a number of ways to resolve civil disputes without having to sue someone. These alternatives to a lawsuit are known as alternative dispute resolution (ADR).

In ADR, trained, impartial persons decide disputes or help parties decide disputes themselves. These persons are called neutrals. For example, in mediations, the neutral is the mediator. Neutrals normally are chosen by the disputing parties or by the court. Neutrals can help resolve disputes without having to go to court.

LAADR 005 (Rev. 03/17)
LASC Adopted 10-03
Cal. Rules of Court, rule 3.221

**Advantages of ADR**
- Often faster than going to trial
- Often less expensive, saving the litigants court costs, attorney's fees and expert fees.
- May permit more participation, allowing parties to have more control over the outcome.
- Allows for flexibility in choice of ADR processes and resolution of the dispute.
- Fosters cooperation by allowing parties to work together with the neutral to resolve the dispute and mutually agree to remedy.
- There are fewer, if any, court appearances. Because ADR can be faster and save money, it can reduce stress.

**Disadvantages of ADR** - ADR may not be suitable for every dispute.
- If ADR is binding, the parties normally give up most court protections, including a decision by a judge or jury under formal rules of evidence and procedure, and review for legal error by an appellate court.
- ADR may not be effective if it takes place before the parties have sufficient information to resolve the dispute.
- The neutral may charge a fee for his or her services.
- If the dispute is not resolved through ADR, the parties may then have to face the usual and traditional costs of trial, such as attorney's fees and expert fees.

**The Most Common Types of ADR**

- **Mediation**

   In mediation, a neutral (the mediator) assists the parties in reaching a mutually acceptable resolution of their dispute. Unlike lawsuits or some other types of ADR, the parties, rather than the mediator, decide how the dispute is to be resolved.

   - **Mediation is particularly effective** when the parties have a continuing relationship, like neighbors or business people. Mediation is also very effective where personal feelings are getting in the way of a resolution. This is because mediation normally gives the parties a chance to express their feelings and find out how the other sees things.

   - **Mediation may not be effective** when one party is unwilling to cooperate or compromise or when one of the parties has a significant advantage in power over the other. Therefore, it may not be a good choice if the parties have a history of abuse or victimization.

LAADR 005 (Rev. 03/17)
LASC Adopted 10-03
Cal. Rules of Court, rule 3.221

**EXHIBIT A**
**Page 059**

- **Arbitration**

  In arbitration, a neutral person called an "arbitrator" hears arguments and evidence from each side and then decides the outcome of the dispute. Arbitration is typically less formal than a trial, and the rules of evidence may be relaxed. Arbitration may be either "binding" or "non-binding." Binding arbitration means the parties waive their right to a trial and agree to accept the arbitrator's decision as final. Non-binding arbitration means that the parties are free to request a trial if they reject the arbitrator's decision.

  Arbitration is best for cases where the parties want another person to decide the outcome of their dispute for them but would like to avoid the formality, time, and expense of a trial. It may also be appropriate for complex matters where the parties want a decision-maker who has training or experience in the subject matter of the dispute.

- **Mandatory Settlement Conference (MSC)**

  **Settlement Conferences are appropriate in any case where settlement is an option.** Mandatory Settlement Conferences are ordered by the Court and are often held near the date a case is set for trial. The parties and their attorneys meet with a judge who devotes his or her time exclusively to preside over the MSC. The judge does not make a decision in the case but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement.

  The Los Angeles Superior Court Mandatory Settlement Conference (MSC) program is free of charge and staffed by experienced sitting civil judges who devote their time exclusively to presiding over MSCs. The judges participating in the judicial MSC program and their locations are identified in the List of Settlement Officers found on the Los Angeles Superior Court website at http://www.lacourt.org/. This program is available in general jurisdiction cases with represented parties from independent calendar (IC) and Central Civil West (CCW) courtrooms. In addition, on an ad hoc basis, personal injury cases may be referred to the program on the eve of trial by the personal injury master calendar courts in the Stanley Mosk Courthouse or the asbestos calendar court in CCW.

  In order to access the Los Angeles Superior Court MSC Program the judge in the IC courtroom, the CCW Courtroom or the personal injury master calendar courtroom must refer the parties to the program.  Further, all parties must complete the information requested in the Settlement Conference Intake Form and email the completed form to mscdept18@lacourt.org.

LAADR 005 (Rev. 03/17)
LASC Adopted 10-03
Cal. Rules of Court, rule 3.221

## Additional Information

To locate a dispute resolution program or neutral in your community:

- Contact the California Department of Consumer Affairs (www.dca.ca.gov) Consumer Information Center toll free at 800-952-5210, or;
- Contact the local bar association (http://www.lacba.org/) or;
- Look in a telephone directory or search online for "mediators; or "arbitrators."

There may be a charge for services provided by private arbitrators and mediators.

A list of approved State Bar Approved Mandatory Fee Arbitration programs is available at http://calbar.ca.gov/Attorneys/MemberServices/FeeArbitration/ApprovedPrograms.aspx#19

To request information about, or assistance with, dispute resolution, call the number listed below. Or you may call a Contract Provider agency directly. A list of current Contract Provider agencies in Los Angeles County is available at the link below.

http://css.lacounty.gov/programs/dispute-resolution-program-drp/

County of Los Angeles Dispute Resolution Program
3175 West 6th Street, Room 406
Los Angeles, CA 90020-1798
TEL: (213) 738-2621
FAX: (213) 386-3995

LAADR 005 (Rev. 03/17)
LASC Adopted 10-03
Cal. Rules of Court, rule 3.221

## VOLUNTARY EFFICIENT LITIGATION STIPULATIONS



**Superior Court of California**
**County of Los Angeles**



**Los Angeles County**
**Bar Association**
**Litigation Section**

**Los Angeles County**
**Bar Association Labor and**
**Employment Law Section**



**Consumer Attorneys**
**Association of Los Angeles**



**Southern California**
**Defense Counsel**



**Association of**
**Business Trial Lawyers**



**California Employment**
**Lawyers Association**

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties.  The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application.  These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

◆**Los Angeles County Bar Association Litigation Section**◆

◆ **Los Angeles County Bar Association**
**Labor and Employment Law Section**◆

◆**Consumer Attorneys Association of Los Angeles**◆

◆**Southern California Defense Counsel**◆

◆**Association of Business Trial Lawyers**◆

◆**California Employment Lawyers Association**◆

LACIV 230 (NEW)
LASC Approved 4-11

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:                         FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | | |

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **INFORMAL DISCOVERY CONFERENCE**<br>(pursuant to the Discovery Resolution Stipulation of the parties) | CASE NUMBER: |
|---|---|

1. This document relates to:

   ☐ Request for Informal Discovery Conference
   ☐ Answer to Request for Informal Discovery Conference

2. Deadline for Court to decide on Request: _____ (insert date 10 calendar days following filing of the Request).

3. Deadline for Court to hold Informal Discovery Conference: _____ (insert date 20 calendar days following filing of the Request).

4. **For a Request for Informal Discovery Conference, <u>briefly</u> describe the nature of the discovery dispute, including the facts and legal arguments at issue.  For an Answer to Request for Informal Discovery Conference, <u>briefly</u> describe why the Court should deny the requested discovery, including the facts and legal arguments at issue.**

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|

TELEPHONE NO.:         FAX NO. (Optional):
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **STIPULATION – DISCOVERY RESOLUTION** | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide a fast and informal resolution of discovery issues through limited paperwork and an informal conference with the Court to aid in the resolution of the issues.**

**The parties agree that:**

1. Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless the moving party first makes a written request for an Informal Discovery Conference pursuant to the terms of this stipulation.

2. At the Informal Discovery Conference the Court will consider the dispute presented by parties and determine whether it can be resolved informally. Nothing set forth herein will preclude a party from making a record at the conclusion of an Informal Discovery Conference, either orally or in writing.

3. Following a reasonable and good faith attempt at an informal resolution of each issue to be presented, a party may request an Informal Discovery Conference pursuant to the following procedures:

    a. The party requesting the Informal Discovery Conference will:

        i. File a Request for Informal Discovery Conference with the clerk's office on the approved form (copy attached) and deliver a courtesy, conformed copy to the assigned department;

        ii. Include a brief summary of the dispute and specify the relief requested; and

        iii. Serve the opposing party pursuant to any authorized or agreed method of service that ensures that the opposing party receives the Request for Informal Discovery Conference no later than the next court day following the filing.

    b. Any Answer to a Request for Informal Discovery Conference must:

        i. Also be filed on the approved form (copy attached);

        ii. Include a brief summary of why the requested relief should be denied;

| SHORT TITLE: | | CASE NUMBER: |
| --- | --- | --- |
| | | |

    iii.   Be filed within two (2) court days of receipt of the Request; and

    iv.   Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

  c.  No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

  d.  If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied. If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

  e.  If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for the Informal Discovery Conference shall be deemed to have been denied at that time.

4.  If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5.  The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court.

    It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a "specific later date to which the propounding [or demanding or requesting] party and the responding party have agreed in writing," within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6.  Nothing herein will preclude any party from applying ex parte for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7.  Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8.  References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
|  |  |

**The following parties stipulate:**

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR PLAINTIFF)

➤ _____
(ATTORNEY FOR DEFENDANT)

➤ _____
(ATTORNEY FOR DEFENDANT)

➤ _____
(ATTORNEY FOR DEFENDANT)

➤ _____
(ATTORNEY FOR _____)

➤ _____
(ATTORNEY FOR _____)

➤ _____
(ATTORNEY FOR _____)

**STIPULATION – DISCOVERY RESOLUTION**

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:                      FAX NO. (Optional): | | |
| E-MAIL ADDRESS (Optional): | | |
| ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **STIPULATION – EARLY ORGANIZATIONAL MEETING** | CASE NUMBER: |
|---|---|

**This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.**

**The parties agree that:**

1.  The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, *to discuss and consider whether there can be agreement on the following:*

    a.  Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could an amended complaint resolve most or all of the issues a demurrer might otherwise raise? If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve. Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable? Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

    b.  Initial mutual exchanges of documents at the "core" of the litigation. (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core." In a personal injury case, an incident or police report, medical records, and repair or maintenance records could be considered "core.");

    c.  Exchange of names and contact information of witnesses;

    d.  Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

    e.  Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

    f.  Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case. Also, when and how such issues can be presented to the Court;

    g.  Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

**STIPULATION – EARLY ORGANIZATIONAL MEETING**

| SHORT TITLE: | | CASE NUMBER: |
|---|---|---|
| | | |

discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint;

h.  Computation of damages, including documents, not privileged or protected from disclosure, on which such computation is based;

i.  Whether the case is suitable for the Expedited Jury Trial procedures (see information at *www.lacourt.org* under "*Civil*" and then under "*General Information*").

2.  The time for a defending party to respond to a complaint or cross-complaint will be extended to _____ for the complaint, and _____ for the cross-
   (INSERT DATE)                                      (INSERT DATE)
complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management benefits provided by this Stipulation. A copy of the General Order can be found at *www.lacourt.org* under "*Civil*", click on "*General Information*", then click on "*Voluntary Efficient Litigation Stipulations*".

3.  The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case. The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4.  References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day

The following parties stipulate:

Date: _____

_____          ➤  _____
(TYPE OR PRINT NAME)                (ATTORNEY FOR PLAINTIFF)
Date: _____

_____          ➤  _____
(TYPE OR PRINT NAME)                (ATTORNEY FOR DEFENDANT)
Date: _____

_____          ➤  _____
(TYPE OR PRINT NAME)                (ATTORNEY FOR DEFENDANT)
Date: _____

_____          ➤  _____
(TYPE OR PRINT NAME)                (ATTORNEY FOR DEFENDANT)
Date: _____

_____          ➤  _____
(TYPE OR PRINT NAME)                (ATTORNEY FOR _____)
Date: _____

_____          ➤  _____
(TYPE OR PRINT NAME)                (ATTORNEY FOR _____)
Date: _____

_____          ➤  _____
(TYPE OR PRINT NAME)                (ATTORNEY FOR _____)

LACIV 229 (Rev 02/15)      **STIPULATION – EARLY ORGANIZATIONAL MEETING**      Page 2 of 2
LASC Approved 04/11

**EXHIBIT A**
**Page 068**

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|

TELEPHONE NO.:                    FAX NO. (Optional):
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **STIPULATION AND ORDER – MOTIONS IN LIMINE** | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide fast and informal resolution of evidentiary issues through diligent efforts to define and discuss such issues and limit paperwork.**

**The parties agree that:**

1. At least _____ days before the final status conference, each party will provide all other parties with a list containing a one paragraph explanation of each proposed motion in limine. Each one paragraph explanation must identify the substance of a single proposed motion in limine and the grounds for the proposed motion.

2. The parties thereafter will meet and confer, either in person or via teleconference or videoconference, concerning all proposed motions in limine. In that meet and confer, the parties will determine:

   a. Whether the parties can stipulate to any of the proposed motions. If the parties so stipulate, they may file a stipulation and proposed order with the Court.

   b. Whether any of the proposed motions can be briefed and submitted by means of a short joint statement of issues. For each motion which can be addressed by a short joint statement of issues, a short joint statement of issues must be filed with the Court 10 days prior to the final status conference. Each side's portion of the short joint statement of issues may not exceed three pages. The parties will meet and confer to agree on a date and manner for exchanging the parties' respective portions of the short joint statement of issues and the process for filing the short joint statement of issues.

3. All proposed motions in limine that are not either the subject of a stipulation or briefed via a short joint statement of issues will be briefed and filed in accordance with the California Rules of Court and the Los Angeles Superior Court Rules.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

**The following parties stipulate:**

Date: _____

_____
(TYPE OR PRINT NAME)

Date: _____

_____
(TYPE OR PRINT NAME)

Date: _____

_____
(TYPE OR PRINT NAME)

Date: _____

_____
(TYPE OR PRINT NAME)

Date: _____

_____
(TYPE OR PRINT NAME)

Date: _____

_____
(TYPE OR PRINT NAME)

Date: _____

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR PLAINTIFF)

➤ _____
(ATTORNEY FOR DEFENDANT)

➤ _____
(ATTORNEY FOR DEFENDANT)

➤ _____
(ATTORNEY FOR DEFENDANT)

➤ _____
(ATTORNEY FOR _____)

➤ _____
(ATTORNEY FOR _____)

➤ _____
(ATTORNEY FOR _____)

**THE COURT SO ORDERS.**

Date: _____

_____
JUDICIAL OFFICER

LACIV 075 (new)
LASC Approved 04/11

**STIPULATION AND ORDER – MOTIONS IN LIMINE**

Page 2 of 2

**EXHIBIT A**
**Page 070**